*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ 08540-6241**
**609.919.6600 / 6701 (fax)**
**Rene M. Johnson**
**Joseph A. Nuccio**
**Attorneys for Defendants**
**Moody's Corporation, Moody's Investors Service, Inc.,**
**and Raymond McDaniel**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ILYA ERIC KOLCHINSKY,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MOODY'S CORPORATION, MOODY'S INVESTORS SERVICE, INC., and RAYMOND MCDANIEL,** <br><br> **Defendants.** | **Civil Action No. 10-6840 (PAC)** <br><br><br> *ELECTRONICALLY FILED* |

## DEFENDANTS MOODY'S CORPORATION AND MOODY'S INVESTORS SERVICE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

On the Brief:

René M. Johnson
Joseph A. Nuccio

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

III.    ARGUMENT .......................................................................................................5

        A.      The Legal Standard For A Rule 12(b)(6) Motion ...................................5

        B.      Plaintiff's Defamation Claim Should Be Dismissed ...............................5

                1.      The Alleged Defamatory Statements Are Non-Defamatory On
                        Their Face ....................................................................................6

                2.      The Alleged Defamatory Statements Are, at Most, Protected
                        Statements Of Opinion .................................................................8

                3.      To the Extent the Statements Contain Verifiable Facts, They Are
                        Substantially True .......................................................................10

                4.      Plaintiff Is A Limited Purpose Public Figure But Has Not Pleaded
                        Facts Sufficient To Establish Actual Malice ..............................13

                5.      Plaintiff Has Not Pleaded Facts Sufficient To Establish Special
                        Damages Or Defamation Per Se .................................................14

        C.      Plaintiff's Defamation Claim Based On Moody's Describing Kramer
                Levin As "Independent" Fails for Additional Reasons........................15

        D.      Plaintiff's Declaratory Judgment Claim Must Be Dismissed For Failure To
                Adequately Plead Waiver Of The Attorney-Client Privilege And Attorney
                Work Product Doctrine ..........................................................................16

        E.      Plaintiff's Remaining Claims Must Be Dismissed As Duplicative Of His
                Defamation Claim ..................................................................................16

        F.      Plaintiff Has Not Alleged Facts Sufficient To Establish His Remaining
                Claims .....................................................................................................17

                1.      Plaintiff's Tortious Interference Claim Fails Because Plaintiff
                        Cannot Establish A Third-Party Business Relationship With Which
                        Moody's Interfered ....................................................................17

                2.      Plaintiff's Intentional Infliction of Emotional Distress Claim Fails
                        Because Plaintiff Cannot Establish Extreme And Outrageous
                        Conduct ......................................................................................18

                3.      Plaintiff's Prima Facie Tort Claim Fails Because Plaintiff Cannot
                        Establish Special Damages Or Disinterested Malevolence ....................19

                4.      Plaintiff's Injurious Falsehood Claim Fails Because Plaintiff
                        Cannot Establish Special Damages............................................19

IV.     CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Agnant v. Shaker,
30 F. Supp. 2d 420 (S.D.N.Y. 1998)........................................................................19

Arias-Zeballos v. Tan,
No. 06-1268, 2006 WL 3075528 (S.D.N.Y. Oct. 26, 2006))........................................17

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)...............................................................................................5

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)...................................................................................................5

Box Tree South, Ltd. v. Bitterman,
873 F. Supp. 833 (S.D.N.Y. 1995)..............................................................................6

Brass v. American Film Technologies, Inc.,
987 F.2d 142 (2d Cir. 1993).......................................................................................3

Broder v. Cablevision Sys. Corp.,
418 F.3d 187 (2d Cir. 2005).......................................................................................2

Carvel Corp. v. Noonan,
350 F.3d 6 (2d Cir. 2003) .........................................................................................17

Celle v. Filipino Reporter Enterprises Inc.,
209 F.3d 163 (2d Cir. 2000)..................................................................................8, 10

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002).......................................................................................2

Contemporary Mission, Inc. v. The New York Times Co.,
842 F.2d 612 (2d Cir. 1988).....................................................................................13

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991).........................................................................................3

Cytec Corp. v. Neuromedical Sys., Inc.,
12 F. Supp. 2d 296 (S.D.N.Y. 1998)...........................................................................9

Davis v. Ross,
754 F.2d 80 (2d Cir. 1985)....................................................................................7, 14

ii

Dessert Beauty v. Fox,
568 F. Supp. 2d 416 (S.D.N.Y. 2008)..........................................................................17

DiBella v. Hopkins,
403 F.3d 102 (2d Cir. 2005)........................................................................................10

Donofrio-Ferrezza v. Nier,
No. 04-1162, 2005 WL 2312477 (S.D.N.Y. Sept. 21, 2005) .......................................9

Dworin v. Deutsch,
No. 06-13265, 2008 WL 508019 (S.D.N.Y. Feb. 22, 2008).........................................8

Fischer v. OBG Cameron Banfill LLP,
No. 08-7707, 2010 WL 3341812 (S.D.N.Y. Aug. 24, 2010)..................................19, 20

Fordham v. Islip Union Free Sch. Dist.,
662 F. Supp. 2d 261 (E.D.N.Y. 2009) ...................................................................17, 19

Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.,
665 F. Supp. 2d 239 (S.D.N.Y. 2009).........................................................................17

In re Take-Two Interactive Software Inc. Deriv. Litig.,
No. 06-5279, 2009 WL 1066251 (S.D.N.Y. Apr. 21, 2009) .......................................12

In re von Bulow,
828 F.2d 94 (2d Cir. 1987)..........................................................................................16

Independent Living Aids, Inc. v. Maxi-Aids, Inc.,
981 F. Supp. 124 (E.D.N.Y. 1997) ...............................................................................9

Liberty Lobby, Inc. v. Dow Jones & Co.,
838 F.2d 1287 (D.C. Cir. 1988)..................................................................................10

Karp v. Hill and Knowlton Inc.,
631 F. Supp. 360 (S.D.N.Y. 1986)................................................................................9

Koulkina v. City of New York,
559 F. Supp. 2d 300 (S.D.N.Y. 2008).........................................................................18

Margrabe v. Sexter & Warmflash, P.C.,
353 Fed. Appx. 547 (2d Cir. Nov. 17, 2009) .........................................................18, 19

O'Brien v. Alexander,
898 F. Supp. 162 (S.D.N.Y. 1995)..............................................................................17

iii

Okoampa-Ahoofe v. Johnson & Higgins,
No. 99-5820, 2000 WL 1471552 (S.D.N.Y. Sept. 29, 2000) ........................................3

Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin,
418 U.S. 264 (1974)..........................................................................................13, 14

Pavlica v. Behr,
No. 04-8152, 2006 WL 1596763 (S.D.N.Y. June 12, 2006) ...................................7, 9

Reuber v. Food Chemical News, Inc.,
925 F.2d 703 (4th Cir. 1991) .......................................................................................14

Rivers v. Towers, Perrin, Forster & Crosby Inc.,
No. 07-5441, 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009)..........................................17

Scolnick v. Correctional Med. Servs.,
132 F. Supp. 2d 1116 (N.D. Ill. 2001) ..........................................................................9

Siotkas v. LabOne, Inc.,
594 F. Supp. 2d 259 (E.D.N.Y. 2009) .........................................................................17

St. Amant v. Thompson,
390 U.S. 727 (1968)......................................................................................................13

Thai v. Cayre Group, Ltd.,
--- F. Supp. 2d ----, 2010 WL 2710615 (S.D.N.Y. July 8, 2010) ...........................14, 15

Treppel v. Biovail Corp.,
No. 03-3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)........................................17

Weinstein v. Friedman,
No. 94-6803, 1996 WL 137313 (S.D.N.Y. Mar. 26, 1996)........................................6, 7

Yiamouyiannis v. Consumer Union of the United States, Inc.,
619 F.2d 932 (2d Cir. 1980)....................................................................................13, 14

## STATE CASES

Aronson v. Wiersma,
65 N.Y.2d 592 (1985) ..........................................................................................6, 7, 15

Butler v. Delaware Otsego Corp.,
203 A.D.2d 783 (3d Dep't 1994) ..................................................................................17

Cheatum v. Wehle,
5 N.Y.2d 585 (1959), aff'd, 11 N.Y.2d 745 (1962).......................................................10

iv

Curiano v. Suozzi,
63 N.Y.2d 113 (1984) ................................................................19

Demas v. Levitsky,
291 A.D.2d 653 (3d Dep't 2002) ................................................17

DiSanto v. Forsyth,
258 A.D.2d 497 (2d Dep't 1999) ................................................20

El-Amine v. Avon Prods., Inc.,
293 A.D.2d 283 (1st Dep't 2002) ...............................................9

Fairley v. Peekskill Star Corp.,
83 A.D.2D 294 (2d Dep't 1981) ..................................................6

Goldberg v. Coldwell Banker, Inc.,
159 A.D.2d 684 (2d Dep't 1990) ..............................................7, 9

Howell v. New York Post Co.,
81 N.Y.2d 115 (N.Y. 1993) ......................................................18

Immuno AG v. Moor-Jankowski,
77 N.Y.2d 235 (1991) ................................................................8

Mobile Training & Educ., Inc. v. Aviation Ground Schools of America,
28 Misc.3d 1226(A) (N.Y. Sup. Ct. N.Y. Co. June 23, 2010) .......18

Noel v. Interboro Mut. Idem. Ins. Co.,
31 A.D.2d 54 (1st Dep't 1968) ..................................................16

Pandian v. N.Y. Health & Hosp. Corp.,
54 A.D.2d 590 (1st Dep't 2008) ................................................19

Pitcock v. Kasowitz, Benson, Torres & Friedman LLP,
74 A.D.3d 613 (1st Dep't 2010) .............................................10, 11

Proskin v. Hearst Corp.,
14 A.D.3d 782 (3d Dep't 2005) .................................................11

Rall v. Hellman,
284 A.D.2d 113 (1st Dep't 2001) ...............................................20

Rinaldi v. Holt, Rinehart & Winston, Inc.,
42 N.Y.2d 369, cert. denied, 434 U.S. 969 (1977) ...................6, 7

Springer v. Viking Press,
90 A.D.2d 315 (1st Dep't 1982) ................................................................................17

Steinhilber v. Alphonse,
68 N.Y.2d 283 (1986) .....................................................................................8, 10

## OTHER AUTHORITY

Black's Law Dictionary (9th Ed. 2009) ......................................................................12

Defendants Moody's Investors Service, Inc. ("MIS") and Moody's Corporation (collectively with MIS, "Moody's"), by and through their counsel, Morgan, Lewis & Bockius LLP, hereby submit the following Memorandum of Law in support of their Motion to Dismiss.

## I.    INTRODUCTION

After resigning from MIS in September 2009, Plaintiff Ilya Eric Kolchinsky ("Plaintiff") embarked on a public campaign against Moody's, accusing his former employer of fraudulent activity in multiple news articles and his testimony before the U.S. House of Representatives Committee on Oversight and Government Reform (the "House Committee").  When asked to comment on Kolchinsky's allegations, Moody's offered a restrained response, which was directed at the substance of Plaintiff's allegations and which in no way impugned Plaintiff's character or his integrity.  Nevertheless, nearly one year after his resignation (and after obtaining employment in the public sector), Plaintiff has now sued Moody's for alleged defamation and related torts.  As explained below, Plaintiff's Amended Complaint must be dismissed in its entirety because he has failed to set forth a single viable cause of action.

Plaintiff's defamation claim fails for at least five reasons:  (1) the alleged statements at issue – that Plaintiff's internal complaints were "evolving," that Moody's investigated Plaintiff's complaints and found them to be "unsupported" and "without merit," that Moody's hired a law firm to conduct an "independent investigation," and that Plaintiff refused to cooperate with that investigation – are not defamatory on their face; (2) the statements are, at most, non-actionable statements of opinion; (3) to the extent the statements can be as construed as asserting any objective facts, the statements are substantially true and therefore insufficient to form the basis for a defamation claim; (4) Plaintiff has not adequately alleged that Moody's statements were made with "actual malice," the required level of intent when a limited purpose public figure, such as Plaintiff, brings a defamation claim; and (5) Plaintiff has neither adequately pled

defamation <u>per se</u> or attempted to plead special damages.  Furthermore, any claim based on Moody's statement concerning the independent investigation conducted by the law firm fails for additional reasons as set forth below.  In short, Plaintiff's defamation claim is rife with deficiencies that require dismissal of the claim as a matter of law.

Plaintiff's remaining claims are similarly defective.  Plaintiff seeks a declaratory judgment that Moody's has waived the privileges and protections that attach to documents related to investigations of Plaintiff's claims, but the law is clear that extrajudicial statements, such as those at issue here, cannot form the basis of a waiver.  Plaintiff's other state law tort claims fail because they are entirely duplicative of his defamation claim.  Even assuming these claims are not barred, each fails for failure to plead requisite elements:  no third-party business relationship for Plaintiff's tortious interference claim; no extreme and outrageous conduct for his intentional infliction of emotional distress claim; no "disinterested malevolence" for his prima facie tort claim; and no special damages for his injurious falsehood claim.

As set forth above and in more detail below, Plaintiff has failed to state a single claim against Moody's.  Accordingly, Moody's respectfully requests that the Court grant its motion in its entirety and dismiss Plaintiff's Amended Complaint with prejudice.

## II.    STATEMENT OF FACTS

Plaintiff resigned from employment with MIS on September 15, 2009.  (Compl. ¶ 30; "A Former Moody's Executive, In Suing Firm, Claims He Was Blacklisted," Wall Street Journal, Sept. 14, 2010 (attached to the Declaration of Joseph A. Nuccio ("Nuccio Decl.") submitted herewith as Exhibit A).[1]   Throughout the two years leading up to his departure, Plaintiff

---

[1]    This article and other articles cited herein are all cited or referred to explicitly in Plaintiff's Complaint and therefore should be deemed incorporated by reference and part of the pleadings for purposes of Moody's Motion to Dismiss.  <u>See</u>, <u>e.g.</u>, Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005); Chambers v. Time Warner,

1057125_2

submitted to Moody's management several complaints (in September 2007, the summer of 2008, and July 2009) regarding an array of topics, including the conduct of a superior, the allegedly new methodology for rating certain financial products, and the rating for a specific financial transaction.  (Compl. ¶¶ 11-15, 24-26.)  According to Plaintiff, his 2008 complaint addressed "[s]eparate and distinct issues" from his September 2007 complaint, and his July 2009 complaint was likewise a "distinct … report."  (Compl. ¶¶ 15, 25.)

"Immediately" after receiving Plaintiff's July 2009 complaint, Moody's hired the law firm of Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") to investigate Plaintiff's complaints.  (Compl. ¶ 27.)  Plaintiff originally scheduled a meeting with Kramer Levin attorneys for September 2, 2009.  (Compl. ¶ 28.)  Plaintiff declined to attend the meeting, allegedly because no agenda had been provided.  (Id.)  On the following day, September 3, 2009, Plaintiff met with members of Moody's Human Resources and Legal Departments.  (Compl. ¶ 29.)  Plaintiff again declined to meet with the Kramer Levin attorneys, allegedly because they would not allow him to have counsel present.  (Compl. ¶¶ 29, 68.)  On Sept 15, 2009, while on suspension, Plaintiff resigned from Moody's.  (Compl. ¶ 30; Nuccio Decl. Ex. A.)

Shortly after his resignation, several articles appeared in the Wall Street Journal and elsewhere in which Plaintiff accused Moody's of fraudulent conduct (i.e., issuing knowingly false rating opinions) in connection with the ratings of several types of debt securities.  (See "Congress Takes On Credit Ratings," Wall Street Journal, Sept. 24, 2009 (Nuccio Decl. Ex. B); "Moody's Probes New Kolchinsky Claims, Says Old Ones Unfounded," Bloomberg, Sept. 25, 2009 (Nuccio Decl. Ex. C); "Raters Face Fresh Push In House Over Claims," Wall Street

---

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Okoampa-Ahoofe v. Johnson & Higgins, No. 99-5820, 2000 WL 1471552, *1 (S.D.N.Y. Sept. 29, 2000).

Journal, Sept. 25, 2009 (Nuccio Decl. Ex. D).)   When asked by the press to comment on Plaintiff's public allegations, Moody's responded by stating that Plaintiff "ha[d] made an evolving series of claims of misconduct within the company" and that after "multiple separate reviews," including an "independent investigation" by Kramer Levin, Moody's "found that his claims were unsupported."   (Compl. ¶¶ 47-49; Nuccio Decl. Exs. B, C, D.)   Moody's further noted that Plaintiff "refused to cooperate with [the Kramer Levin] investigation."   (Compl. ¶ 66; Nuccio Decl. Ex. B; <u>see also</u> Compl. ¶ 65; Nuccio Decl. Ex. F.)   As made clear by the articles' context, Moody's did not initiate contact with the press; rather, each of these comments was a reply to Plaintiff's highly publicized accusations.   (<u>See</u> Nuccio Decl. Exs. B, C, D.)

Plaintiff subsequently testified before the House Committee on September 30, 2009, reiterating his accusations against Moody's.   (Compl. ¶¶ 2, 79; House Committee Hearing Transcript Excerpts (Nuccio Decl. Ex. E).)   During those proceedings, MIS Chief Credit Officer Richard Cantor testified that, <u>inter alia</u>, an "independent law firm" retained by Moody's had found that Plaintiff's allegations of fraudulent conduct were "unsupported" and "ha[d] no merit." (Nuccio Decl. Ex. E at 21, 48-49.)   Several weeks later, in response to further press inquiry about Plaintiff's and other individuals' testimony before the House Committee, Moody's repeated Mr. Cantor's congressional testimony that it had "commissioned an outside law firm to conduct an independent investigation of all of Mr. Kolchinsky's assertions" and that "[t]he preliminary findings of the independent investigators [were] completely consistent with Moody's own compliance review – namely that Mr. Kolchinsky's claims of misconduct are unfounded." (Compl. ¶ 74; McClatchy Q&A (Nuccio Decl. Ex. F).)[2]

---

[2]      Plaintiff also alleges defamation based on statements made by Moody's CEO Raymond McDaniel.  <u>See</u> Compl. ¶¶ 50, 75.  These allegations are the subject of Mr. McDaniel's separately filed Motion to Dismiss.

4

## III.     ARGUMENT

### A.     The Legal Standard For A Rule 12(b)(6) Motion.

Under Federal Rule of Civil Procedure Rule 12(b)(6), a court should dismiss a complaint if it fails to set forth "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556).  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," Iqbal, 129 S. Ct. at 1949, as well as conclusions that are contradicted by documents incorporated into the complaint.  Thus, a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Iqbal, 129 S. Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

### B.     Plaintiff's Defamation Claim Should Be Dismissed.

Plaintiff's core allegation is that Moody's defamed him by making certain public statements, which fall into four categories:

- that Plaintiff's internal complaints at Moody's constituted "an evolving series of claims of misconduct" (Compl. ¶ 47);

- that Plaintiff's claims were found by Moody's to be "unsupported" and "without merit" (Compl. ¶¶ 47-49);

- that Plaintiff "refused" or "declined to cooperate" with the Kramer Levin investigation (Compl. ¶¶ 65-66); and

- that Kramer Levin performed an "independent" investigation (Compl. ¶ 74).

To state a claim based on these allegedly defamatory statements, Plaintiff must adequately plead four elements: "(1) a false and defamatory statement of and concerning Plaintiff; (2) publication to a third-party; (3) the requisite degree of fault; and (4) special harm or *per se* actionability." Weinstein v. Friedman, No. 94-6803, 1996 WL 137313, at *10 (S.D.N.Y. Mar. 26, 1996) (citing Box Tree South, Ltd. v. Bitterman, 873 F. Supp. 833, 874 (S.D.N.Y. 1995)).  Plaintiff fails to meet several of these elements for an array of reasons:  (1) the statements are not defamatory as a matter of law; (2) the statements are, at worst, statements of opinion; (3) to the extent the statements express facts, they are substantially true; (4) Plaintiff has failed to plead that Moody's acted with "actual malice," the requisite level of intent; and (5) Plaintiff has not pleaded facts establishing either special damages or defamation per se.  Also, the claims based on Moody's reference to the "independent investigation" of Kramer Levin must be dismissed for two additional reasons:  that statement is not "of and concerning" Plaintiff and is absolutely privileged as a fair and true report of Mr. Cantor's testimony before the House Committee.  For these reasons, and as discussed in more detail below, Plaintiff's defamation claim must be dismissed.

1. **The Alleged Defamatory Statements Are Non-Defamatory On Their Face.**

Whether a statement is capable of a defamatory meaning is a threshold question of law to be resolved by the court in the first instance.  Aronson v. Wiersma, 65 N.Y.2d 592, 593 (1985). A statement is defamatory only if it "tend[s] to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." Fairley v. Peekskill Star Corp., 83 A.D.2d 294, 296 (2d Dep't 1981); see also Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 379,

cert. denied, 434 U.S. 969 (1977).  A court must "consider the publication as a whole" and "not

pick out and isolate particular phrases," and the publication's words "are to be construed not with

the close precision expected from lawyers and judges but as they would be read and understood

by the public to which they are addressed," without "strain[ing] to place a particular

interpretation on the published words."  Davis v. Ross, 754 F.2d 80, 83 (2d Cir. 1985).  The

statement in question must also be "read against the background of its issuance with respect to

the circumstances of the publication."  Id.  "If a statement is not capable of a defamatory

meaning, then, obviously, the motion to dismiss should be granted."  Weinstein, 1996 WL

137313, at *10.

None of the statements complained of by Plaintiff, when considered in context and read

from the point of view of an ordinary observer, is defamatory on its face because none makes

any claim regarding Plaintiff's honesty, integrity, or motivation for raising his various

complaints.  The statement that Moody's found Plaintiff's claims to be "unsupported" and

"without merit" suggests only that Moody's believed that Plaintiff's allegations were mistaken,

not that they were made in bad faith.  See Pavlica v. Behr, No. 04-8152, 2006 WL 1596763, at

*7 (S.D.N.Y. June 12, 2006) (finding statement that plaintiff's suit had "no valid basis" was not

defamatory because it did not "imply that she was dishonest").  Similarly, the statement that

Plaintiff "refused to cooperate" with the Kramer Levin investigation is not defamatory because a

claim of mere non-participation would not "induce an evil opinion" of Plaintiff in the minds of

the reader.  Cf. Goldberg v. Coldwell Banker, Inc., 159 A.D.2d 684 (2d Dep't 1990) (holding

that allegation that plaintiff was "uncooperative, abrasive and dilatory" did not state a defamation

claim).  Nor would Moody's reference to the "independent investigation" of Kramer Levin

somehow expose Plaintiff to any "public hatred" or opprobrium.  The statement does not make

1057125_2

any assertion at all concerning Plaintiff (see infra p. 15), let alone risk depriving Plaintiff of

"friendly intercourse in society." Rinaldi, 42 N.Y.2d at 379.  Finally, the statement that

Plaintiff's claims "evolved" over time suggests only that Plaintiff made several different

complaints, refining his claims as more information became known.  (See www.merriam-

webster.com/dictionary/evolve.)  Plaintiff admits as much in his Amended Complaint (see supra

pp. 2-3).

In sum, Plaintiff essentially alleges that Moody's defamed him by disagreeing with his

public assertion that Moody's committed fraud.  Because Moody's statements in its defense

could be viewed as defamatory only through a "strained or artificial" construction, the statements

are not defamatory as a matter of law.  See Aronson, 65 N.Y.2d at 594.

> ## 2.   The Alleged Defamatory Statements Are, at Most, Protected Statements Of Opinion.

Even assuming that the statements at issue reflect negatively on Plaintiff's character and

abilities, the statements are non-actionable opinion and therefore cannot form the basis for a

defamation claim.  Whether a statement is one of opinion is a question of law for the court.  See

Dworin v. Deutsch, No. 06-13265, 2008 WL 508019, at *3  (S.D.N.Y. Feb. 22, 2008); Celle v.

Filipino Reporter Enterprises Inc., 209 F.3d 163, 178 (2d Cir. 2000).  To determine whether a

statement is opinion, New York courts will consider (1) whether the specific language in issue

has a "precise meaning which is readily understood" or whether it is "indefinite and ambiguous";

(2) whether the statement is "capable of being objectively characterized as true or false"; (3) "the

full context of the communication in which the statement appears"; and (4) the "broader social

context or setting surrounding the communication … which might signal to readers or listeners

that what is being read or heard is likely to be opinion, not fact."  Steinhilber v. Alphonse, 68

N.Y.2d 283, 292 (1986); see also Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 252 (1991).

Under these standards, an involved party's comment characterizing an ongoing controversy will be construed, both by an average reader and by the courts, as a statement of opinion.  See Karp v. Hill and Knowlton Inc., 631 F. Supp. 360, 365 (S.D.N.Y. 1986) (public comment by president of party in ongoing litigation that recent ruling "support[ed] our claim that [plaintiff] defrauded [them]" was protected opinion); see also Independent Living Aids, Inc. v. Maxi-Aids, Inc., 981 F. Supp. 124, 127-28 (E.D.N.Y. 1997) (finding defendant's remarks that plaintiff was "a liar," made in context of plaintiff's accusing defendant of unfair trade practices, "merely expressed the opinion that anyone who persisted in [those accusations] could not be [telling the truth]").

In light of this standard, it is clear that Moody's statements regarding the merit of Plaintiff's accusations are non-actionable statements of opinion.  See, e.g., Cytec Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 302 (S.D.N.Y. 1998) (statement that defendant was "confident" plaintiff's claims were "without merit" was opinion); Pavlica, 2006 WL 1596763, at *6 (statement that plaintiff's claims had "no valid basis" was opinion); El-Amine v. Avon Prods., Inc., 293 A.D.2d 283 (1st Dep't 2002) (statement that plaintiff's claims were "without merit" was opinion); Scolnick v. Correctional Med. Servs., 132 F. Supp. 2d 1116, 1128 (N.D. Ill. 2001) (statement that plaintiff's claims were "inaccurate" was opinion).  Courts also recognize that statements about an employee's behavior and performance – for example, Moody's assertion that Plaintiff "refused to cooperate" with Kramer Levin -- are inherently subjective and thus matters of opinion.  See, e.g., Donofrio-Ferrezza v. Nier, No. 04-1162, 2005 WL 2312477, at *16 (S.D.N.Y. Sept. 21, 2005) (statement that plaintiff was a "non-contributor" and offered "no help" held a non-actionable opinion); Goldberg, 159 A.D.2d 684 (statement that plaintiff was "uncooperative" was opinion).  Finally, the references to Kramer Levin as "independent" and Plaintiff's claims as "evolving" are simply Moody's characterizations of admitted facts (that is,

9

the fact that Kramer Levin, an outside law firm, conducted an investigation, and the fact that Plaintiff made a series of "separate and distinct" claims regarding Moody's practices (see supra pp. 2-4)). Thus, the statements lack "precise meaning" and are incapable "of being objectively characterized as true or false." Steinhilber, 68 N.Y.2d at 292. Accordingly, the statements are non-actionable opinion and cannot form the basis of a defamation claim.

3.     **To the Extent the Statements Contain Verifiable Facts, They Are Substantially True.**

To the degree that the allegedly defamatory statements express any objective fact, the statements are substantially true and therefore not defamatory as a matter of law. See, e.g., Pitcock v. Kasowitz, Benson, Torres & Friedman LLP, 74 A.D.3d 613 (1st Dep't 2010). "Where the question of truth or falsity is a close one, a court should err on the side of non-actionability." Liberty Lobby, Inc. v. Dow Jones & Co., 838 F.2d 1287, 1292 (D.C. Cir. 1988). While a plaintiff's "bland cryptic claim of falsity supported by [his own] credibility … might be sufficient to establish a proposition in other civil cases, the First Amendment demands more" to support a defamation claim. Celle, 209 F.3d at 180. It is not a defendant's burden to establish truth, but rather the plaintiff's burden to establish falsity. Id.; see also Cheatum v. Wehle, 5 N.Y.2d 585, 594 (1959), aff'd, 11 N.Y.2d 745 (1962).[3]

Here, Plaintiff has not adequately pled that any of Moody's alleged defamatory statements are actually false. First, Plaintiff's internal claims did "evolve" over time; Plaintiff admits that his September 2007, summer 2008, and July 2009 complaints were all "distinct." (Compl. ¶¶ 15, 25.) Plaintiff also admits that his successive complaints were made in response to additional information he claims to have obtained. (See Compl. ¶¶ 14, 24.) Plaintiff thereby

---

[3]     Because Plaintiff is a limited purpose public figure (see infra pp. 13-14), he must prove the falsity of Moody's statements by "clear and convincing evidence." See DiBella v. Hopkins, 403 F.3d 102 (2d Cir. 2005).

admits that his claims developed and changed over time – in other words, "evolve[d]."  By his own concession, the statement is true and therefore non-actionable.  See, e.g., Proskin v. Hearst Corp., 14 A.D.3d 782 (3d Dep't 2005) (where substitution of a synonym for the allegedly defamatory word renders the statement true, a defamation claim will not lie).

Second, the fact that Moody's <u>found</u> Plaintiff's internal complaints of misconduct to be "unsupported" and "without merit" is never challenged by Plaintiff; it is not contested, for example, that Kramer Levin determined that Moody's did not commit any wrongdoing.  Plaintiff argues only that the statements were inaccurate because Moody's adopted some of his policy recommendations (see Compl. ¶¶ 44, 52-63), but the statements assert only that Plaintiff's allegation of <u>misconduct</u> by Moody's were unfounded, not that his policy recommendations were unsupported.  See Nuccio Decl. Exs. B (referring to "claims of misconduct"), C (referring to "allegations of potential impropriety"), D (referring to "allegations of impropriety"), F (referring to "claims of misconduct").)  Accordingly, the statements are, at the very least, "substantially true."  See Pitcock, 74 A.D.3d at 614.

Third, Plaintiff did in fact "refuse to cooperate" with Kramer Levin, as Moody's stated.  Plaintiff declined to speak with Kramer Levin both on September 2, 2009 and September 3, 2009 (see supra p. 3).  Plaintiff's contention is not that he, in fact, agreed to speak with Kramer Levin, but only that his refusal to speak with the firm's attorneys was justified by Moody's alleged refusal to allow attendance at the meetings by his attorney.  (Compl. ¶¶ 28, 37.)  Regardless of the veracity of that claim,[4] the fact remains that, by Plaintiff's own admission, he refused to meet

---

[4]     Plaintiff claims this allegation is supported by a recording of the September 3, 2009 meeting, Compl. ¶ 29, but to date has refused Moody's request that he produce a copy thereof to verify his claims.  In fact, the one time Plaintiff quotes himself from that alleged recording, he is <u>not</u> requesting counsel's presence for the Kramer Levin meeting; he merely states "I have counsel, we've had employment issues here."  Compl. ¶ 37 n3.

with the Kramer Levin attorneys on two separate occasions.  Indeed, Plaintiff apparently

preferred to resign from his employment rather than speak with Kramer Levin.  Moody's

statement that Plaintiff "declined" and "refused" to cooperate with the Kramer Levin

investigation is therefore, at the very least, substantially true.

Finally, the reference to Kramer Levin as "independent" is also at the very least

substantially true.  As Moody's made clear, Kramer Levin was an "outside law firm" – in other

words, a separate and distinct entity from Moody's – that was hired to answer questions raised

by Plaintiff's concerns regarding Moody's internal review of his allegations.  (Compl. ¶ 74

("Because [Plaintiff] raised questions about Moody's own review of the evolving claims he

made, Moody's commissioned an outside law firm to conduct an independent investigation of all

of Mr. Kolchinsky's assertions.").)  Because Kramer Levin meets precisely the definition of

"independent counsel," the statements at issue are literally true.  See Black's Law Dictionary

(9th Ed 2009) (defining "independent counsel" as an attorney "hired to provide an unbiased

opinion about a case or conduct an impartial investigation").  Plaintiff alleges that Kramer Levin

was not, in fact, "unbiased" or "impartial," but this does not alter the admitted fact that the firm

was hired to provide an impartial unbiased opinion.  See, e.g., In re Take-Two Interactive

Software Inc. Deriv. Litig., No. 06-5279, 2009 WL 1066251, at *7 (S.D.N.Y. Apr. 21, 2009)

(noting that Kasowitz was an "independent law firm" and that it conducted a reasonable

investigation).

---

This alleged statement does not support Plaintiff's claim that he "protest[ed] that he was
represented by an attorney and wanted her involved in the [Kramer Levin] meeting."
Compl. ¶ 29.  If that is all the recording reflects – and it is not clear why Plaintiff would
refrain from citing to other parts of the recording if it made his "protestations" clear –
then his claim to have told Moody's he wanted counsel present for the Kramer Levin
meeting is flat-out false.

4.   **Plaintiff Is A Limited Purpose Public Figure But Has Not Pleaded Facts Sufficient To Establish Actual Malice.**

The facts alleged in Plaintiff's Complaint and revealed in the press articles he cites reveal that he is a limited purpose public figure because he injected himself into a public debate concerning Moody's practices.  A limited purpose public figure is one who has (1) successfully invited public attention to his views in an effort to influence others; (2) voluntarily injected himself into a related public controversy; (3) assumed a position of prominence therein; and (4) maintained regular and continuing access to the media.  Contemporary Mission, Inc. v. The New York Times Co., 842 F.2d 612, 617 (2d Cir. 1988).  A limited purpose public figure who asserts a defamation claim must show that a defendant acted with "actual malice" -- that is, "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."  Yiamouyiannis v. Consumer Union of the United States, Inc., 619 F.2d 932, 940 (2d Cir. 1980).  To meet this standard, a plaintiff must allege "either that the publisher actually entertained serious doubts about the veracity of the publication, or that there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."  Contemporary Mission, 842 F.2d at 621; see also St. Amant v. Thompson, 390 U.S. 727, 731 (1968) (stating that the "reckless disregard" standard requires a "high degree of awareness of . . . probable falsity").  Bare assertions of ill will do not suffice.  Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 281-82 (1974).

By repeatedly asserting to the press that Moody's had engaged in fraudulent conduct – and appearing before the House Committee to give testimony to that effect – Plaintiff "thrust himself" into the controversy surrounding Moody's rating and thereby became a limited purpose public figure.  See Yiamouyiannis, 619 F.2d at 940 (plaintiff became limited purpose public figure upon appearing before House Committee on Governmental Operations to state views on

13

fluoridation of public waters and rebut arguments of National Cancer Institute thereon).

Plaintiff's claim that Moody's somehow "thrust [him] into the public arena … by suspending

him" ignores the fact that a private employment dispute between Moody's and Plaintiff became

an event of public knowledge and concern only when Plaintiff decided to speak with reporters

and testify before the House Committee.[5]

Because Plaintiff is a limited purpose public figure, he must, as stated above, plead and

prove that Moody's statements were made with "actual malice."  Plaintiff's allegations regarding

Moody's alleged state of mind are limited to the bald assertion that Moody's "acted in willful

ignorance and reckless disregard of contradictory evidence in its possession."  (Compl. ¶ 82.)

Plaintiff asserts, in other words, that Moody's should have known that Plaintiff's claims were

not, contrary to Kramer Levin's finding, "without merit."  This "bare assertion," devoid of a

single corroborating detail, does not provide any "obvious reasons to doubt the veracity" of the

conclusions reached by Moody's and Kramer Levin regarding the merits of Plaintiff's

complaints.  Accordingly, Plaintiff has failed adequately to plead actual malice.  Old Dominion,

418 U.S. at 281-82.

### 5. Plaintiff Has Not Pleaded Facts Sufficient To Establish Special Damages Or Defamation Per Se.

A plaintiff must adequately plead either special damages or defamation per se to survive

a motion to dismiss under Rule 12(b)(6).  Thai v. Cayre Group, Ltd., --- F. Supp. 2d ----, 2010

WL 2710615, at *7 (S.D.N.Y. July 8, 2010).  To constitute defamation per se, a statement must

"tend[] to disparage a person in the way of his office, profession or trade."  Davis, 754 F.2d at

---

[5]     Plaintiff's claim that he had to be "persuade[d]" to appear before the House Committee is
of no moment.  Compl. ¶ 32.  The fact remains that he did so appear – voluntarily --
which is sufficient to make him a limited purpose public figure.  See Yiamouyiannis, 619
F.2d at 938; Reuber v. Food Chemical News, Inc., 925 F.2d 703, 708-11 (4th Cir. 1991).

14

82.  But "merely recit[ing] the standard for defamation per se" is insufficient to survive a motion to dismiss "without pleading any facts to support the inference that [Moody's] statement impute[d] incompetence, incapacity or unfitness in the performance of [Plaintiff's] profession." Thai, 2010 WL 2710615, at *7.  Here, "[t]aken in context and according to their ordinary meaning," id., the allegedly defamatory statements simply indicate (1) that Moody's and its independent law firm disagreed with the conclusions reached by Plaintiff regarding Moody's alleged misconduct; and (2) that Plaintiff did not cooperate with the Kramer Levin investigation. These statements have nothing to do with Plaintiff's profession or his general skill in his chosen line of work.  Accordingly, and despite Plaintiff's baseless and conclusory assertions to the contrary, Plaintiff has failed to adequately plead defamation per se and thus his claim must be dismissed absent a showing of special damages.  Id.; see also Aronson, 65 N.Y.2d at 594 (affirming dismissal where allegedly defamatory statement was, at worst, a "general reflection upon the plaintiff's character or qualities").  Because Plaintiff has not even attempted to plead special damages, his defamation claim fails.

### C.   Plaintiff's Defamation Claim Based On Moody's Describing Kramer Levin As "Independent" Fails for Additional Reasons.

As explained in the Memorandum of Raymond McDaniel in support of his Motion to Dismiss (the "McDaniel Memorandum"), the allegation that Moody's retained an "independent law firm" to conduct an investigation cannot form the basis of a defamation claim because the statement (1) is not "of and concerning" Plaintiff and (2) is absolutely privileged under New York Civil Rights Law § 74.  (See McDaniel Mem. at pp. 4-7.)  For the same reasons, which Moody's hereby incorporates, Moody's statement that an "outside law firm" conducted an "independent investigation" (see Compl. ¶ 74) also fails.  Accordingly, Plaintiff's defamation claim must be dismissed insofar as it is based on this statement.

**D.**     **Plaintiff's Declaratory Judgment Claim Must Be Dismissed For Failure To Adequately Plead Waiver Of The Attorney-Client Privilege And Attorney Work Product Doctrine.**

Plaintiff's declaratory judgment claim seeks "waive[r of] any claims of confidentiality and privilege [held by Moody's] with respect to [his] reporting of wrongdoing during his employment … and Moody's purported 'independent' investigation of his reports." The basis for this statement is Moody's "affirmative[] us[e] [of] the media to disparage [Plaintiff's] work in his profession." (Compl. ¶ 114.) This claim is foreclosed by binding Second Circuit precedent. In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987). As the von Bulow court explicitly held, disclosure of allegedly privileged or protected information in a non-judicial setting does not "broaden [any] waiver beyond those matters actually revealed." See id. ("[W]e hold therefore that the extrajudicial disclosure of an attorney-client communication -- one not subsequently used by the client in a judicial proceeding to his adversary's prejudice -- does not waive the privilege as to the undisclosed portions of the communication."). In other words, Moody's disclosure of any portion of Kramer Levin's report in an non-judicial setting (e.g., newspaper articles) cannot, as a matter of law, establish waiver as to any other portion of the report or any communications between Moody's and Kramer Levin. Accordingly, Plaintiff's claim for a declaratory judgment is fundamentally flawed and must be dismissed.

**E.**     **Plaintiff's Remaining Claims Must Be Dismissed As Duplicative Of His Defamation Claim.**

Plaintiff's remaining claims are duplicative of his defamation claim and must therefore be dismissed. New York courts routinely hold that the following claims, when predicated upon the same alleged conduct that forms the basis of a defamation claim, must be dismissed as duplicative:

- tortious interference with business relationships/economic advantage (see Noel v. Interboro Mut. Indem. Ins. Co., 31 A.D.2d 54 (1st Dep't 1968));

16

- intentional infliction of emotional distress (see Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 276 (E.D.N.Y. 2009); Rivers v. Towers, Perrin, Forster & Crosby Inc., No. 07-5441, 2009 WL 817852, at *3 (E.D.N.Y. Mar. 27, 2009); Demas v. Levitsky, 291 A.D.2d 653 (3d Dep't 2002));

- prima facie tort (see Siotkas v. LabOne, Inc., 594 F. Supp. 2d 259, 276 (E.D.N.Y. 2009); Arias-Zeballos v. Tan, No. 06-1268, 2006 WL 3075528, at *13 (S.D.N.Y. Oct. 26, 2006); Butler v. Delaware Otsego Corp., 203 A.D.2d 783 (3d Dep't 1994); Springer v. Viking Press, 90 A.D.2d 315, 318 (1st Dep't 1982)); and

- injurious falsehood (see O'Brien v. Alexander, 898 F. Supp. 162 (S.D.N.Y. 1995)).

Here, Plaintiff's remaining claims are based on the same factual allegations as his defamation claim. Accordingly, they must be dismissed as duplicative.

**F.      Plaintiff Has Not Alleged Facts Sufficient To Establish His Remaining Claims.**

      **1.      Plaintiff's Tortious Interference Claim Fails Because Plaintiff Cannot Establish A Third-Party Business Relationship With Which Moody's Interfered.**

To establish a claim for tortious interference with business relationships or prospective economic advantage, a plaintiff must plead and prove, among other things, that he had a business relationship with a third party with which the defendant interfered. See e.g., Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003); Treppel v. Biovail Corp., No. 03-3002, 2005 WL 2086339, at *4 (S.D.N.Y. Aug. 30, 2005). The law is clear that, to state a viable claim, a complaint must name the "specific" business relation with which the defendant allegedly interfered. See, e.g., Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009). Here, Plaintiff does not even attempt to meet this standard, alleging only that Moody's statements damaged Plaintiff in the eyes of the "business community." (Compl. ¶ 99.) This is exactly the type of sweeping, unsupported generalization that courts have found insufficient to state a claim for tortious interference with business relations. See, e.g., id; see also Dessert Beauty v. Fox, 568 F.Supp.2d 416, 429 (S.D.N.Y.2008);

17

Mobile Training & Educ., Inc. v. Aviation Ground Schools of America, 28 Misc.3d 1226(A), 2010 WL 3310257 (N.Y. Sup. Ct. N.Y. Co. June 23, 2010).  Accordingly, the tortious interference claim must be dismissed.

> **2.**   **Plaintiff's Intentional Infliction of Emotional Distress Claim Fails Because Plaintiff Cannot Establish Extreme And Outrageous Conduct.**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege, among other things, that the defendant engaged in "extreme and outrageous" conduct – that is, conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993); see also Margrabe v. Sexter & Warmflash, P.C., 353 Fed. Appx. 547, 550 (2d Cir. Nov. 17, 2009) (conduct "must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community").  This "strict standard" is "rigorous, and difficult to satisfy."  Howell, 81 N.Y.2d at 122.  Whether alleged conduct is sufficiently outrageous may be decided as a matter of law.  Koulkina v. City of New York, 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008).  Here, Plaintiff cites no allegedly "extreme and outrageous conduct" by Moody's other than the alleged defamatory statements previously discussed at length.  Taken in (or even out of) context, those statements do not even begin to approach the standard necessary for an IIED claim.  Far from being "utterly intolerable in a civilized community," Moody's statements merely represent its efforts to reasonably defend itself from Plaintiff's public accusations of fraud.  To hold otherwise would mean that any company or individual accused in the press of improper behavior could face an IIED claim if it attempted to dispute the allegations of misconduct.  Accordingly, Plaintiff's IIED claim must be dismissed.

1057125_2

3.     **Plaintiff's Prima Facie Tort Claim Fails Because Plaintiff Cannot Establish Special Damages Or Disinterested Malevolence.**

To prove prima facie tort, a plaintiff must show (1) intentional infliction of emotional harm, (2) resulting in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful.  <u>Fordham</u>, 662 F. Supp. 2d at 277.  To establish the third element, a plaintiff must plead that the <u>only</u> motivation for the alleged wrongful act is "disinterested malevolence."  <u>Margrabe</u>, 353 Fed. Appx. at 550; <u>see</u> <u>also</u> <u>Pandian v. N.Y. Health & Hosp. Corp.</u>, 54 A.D.2d 590, 591 (1st Dep't 2008); <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 117 (1984).  To plead special damages, meanwhile, a plaintiff "must set forth an itemized account of her economic or pecuniary losses."  <u>Fischer v. OBG Cameron Banfill LLP</u>, No. 08-7707, 2010 WL 3341812, at *7 (S.D.N.Y. Aug. 24, 2010) (citing <u>Agnant v. Shaker</u>, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998)).

Plaintiff's Complaint does not even provide a "formulaic recitation" of the elements of a prima facie tort claim (<u>see</u> <u>supra</u> p. 5), let alone provide factual support for the requisite elements.  In particular, Plaintiff fails to satisfy either the second or third elements of a prima facie claim.  Moody's statements were made in response to public accusations of wrongdoing – and certainly not "solely" because of "disinterested malevolence" toward Plaintiff.  Notably, Plaintiff never alleges otherwise.  Moreover, the Amended Complaint does not even attempt to provide an "itemized account" of his losses.  Accordingly, the prima facie tort claim is defective and must be dismissed.

4.     **Plaintiff's Injurious Falsehood Claim Fails Because Plaintiff Cannot Establish Special Damages.**

Injurious falsehood may lie when a defendant "utter[s] or furnish[es] … false information … maliciously or recklessly, without regard to its consequences."  <u>Fischer</u>, 2010 WL 3341812 at *7.  To establish such a claim, a plaintiff must plead and show special damages, "which are an

19

essential element of [injurious falsehood and] must be pleaded with sufficient specificity."

DiSanto v. Forsyth, 258 A.D.2d 497, 498 (2d Dep't 1999).  As with prima facie tort, special

damages must be plead via "an itemized account of [plaintiff's] economic or pecuniary losses."

Fischer, 2010 WL 3341812 at *7.  A general allegation of damages does not meet this

requirement.  Id.; see also Rall v. Hellman, 284 A.D.2d 113, 114 (1st Dep't 2001).  Here,

Plaintiff alleges only that he is entitled to "compensatory, consequential, punitive and exemplary

damages" (Compl. ¶ 110), which does not come close to providing an itemization of alleged

damages with the requisite degree of specificity.  Accordingly, the injurious falsehood claim

must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Moody's respectfully requests that the Court grant its motion

and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.


Respectfully submitted,

**Morgan, Lewis & Bockius LLP**
Attorneys for Moody's Corporation, Moody's
Investors Service, Inc., and Raymond McDaniel


s/ Joseph A. Nuccio
René M. Johnson
Dated:  December 28, 2010              Joseph A. Nuccio

20