UNITED STATES DISTRICT COURT
SOUTHERN DISTRIST OF NEW YORK
-------------------------------------------------------------------x

ILYA ERIC KOLCHINSKY,                              :
                                                   :        Index No. 10-CV-6840 (PAC)
                             Plaintiff,            :
                                                   :
-against-                                          :
                                                   :
MOODY'S CORPORATION, MOODY'S INVESTORS  :
SERVICES, INC., and RAYMOND McDANIEL,             :
                                                   :
                             Defendants.           :
-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOODY'S CORPORATION'S AND MOODY'S INVESTORS SERVICES, INC.'S MOTION TO DISMISS


# MALECKI LAW

Jenice L. Malecki (JM 2871)
Adam M. Nicolazzo (AN 1583)
*Attorneys for Plaintiff*
11 BROADWAY, SUITE 715
NEW YORK, NEW YORK 10004
(212) 943-1233 TELEPHONE
(212) 943-1238 FACSIMILE

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 1

ARGUMENT.............................................................................................................................. 1

PART I. THE LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE
12(B)(6)................................................................................................................................... 1

PART II. THE COURT SHOULD DENY MOODY'S 12(B)(6) MOTION TO DISMISS MR.
KOLCHINSKY'S DEFAMATION CLAIM............................................................................ 2

   1.   The Alleged Defamatory Statements are Defamatory on Their Face............................... 2

     a.   "Unsupported Claims".................................................................................................. 5

     b.   "Failed to Cooperate" ................................................................................................. 6

     c.   Findings of the Purported "Independent" Investigation .............................................. 7

   2.   Moody's Defamatory Statements Are Not Protected Statements Of Opinion. ............... 8

     a.   Precise Meaning and Able to be Characterized as True or False ................................ 9

     b.   Examination of Full Context ..................................................................................... 11

   3.   Moody's Defamatory Statements Were Not "Substantially True"................................ 14

   4.   Plaintiff is a Private Figure and is not Required to Plead Actual Malice ...................... 16

     a.   Because Plaintiff is a Private Figure, He Need Not Plead Actual Malice................... 16

     b.   Even if Plaintiff is a Limited Purpose Public Figure, He Has Adequately Pled Actual
Malice ................................................................................................................................ 18

   5.   Plaintiff has Pled Facts Sufficient to Establish Special Damages or Defamation *Per Se*
19

PART III. PLAINTIFF'S DEFAMATION CLAIM DOES NOT FAIL FOR THE REASONS
SET FORTH IN HIS OPPOSITION TO DEFENDANT McDANIEL'S MOTION TO
DISMISS.............................................................................................................................. 20

PART IV. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM IS ADEQUATELY PLED
............................................................................................................................................ 20

PART V. PLAINTIFF'S REMAINING CLAIMS ARE ADEQUATELY PLED ................... 21

   1.  Tortious Interference with Business Relations and Economic Advantage...................... 21

   2.  Intentional Infliction of Emotional Distress .................................................................. 22

PART VI. PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH HIS
REMAINING CLAIMS............................................................................................................ 22

   1.  Plaintiff Adequately Stated his Tortious Interference with Business Relationships and
Economic Advantage Claim.................................................................................................... 22

   2.  Plaintiff Adequately Stated his Intentional Infliction of Emotional Distress Claim ...... 23

CONCLUSION................................................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ........................................................ 22

*Armstrong v. Simon & Schuster, Inc.* 85 N.Y.2d 373 (N.Y. 1995) ................................................ 3

*Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) ........................................................ 2, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................ 2

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 177 (2nd Cir. 2000) .............................. 2

*Church of Scientology International v. Behar*, 238 F.3d 168, 173 (2nd Cir. 2001) ...................... 16

*Clark v. New York Telephone Co.*, 52 A.D.2d 1030 (4th Dept. 1976) .......................................... 25

*Contemporary Mission, Inc. v. New York Times*, 842 F.2d 612, 617 (2nd Cir. 1988).................. 19

*Davis v. Ross*, 754 F. 2d 80, 83 (2nd Cir 1985) .............................................................................. 3

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111-112 (2nd Cir. 2010)........................................ 2

*Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 768 (1977) ........................................ 4

*Geisler v. Petrocelli*, 616 F. 2d 636, 640 (2nd Cir. 1980).................................................................. 1

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ........................................................................ 19

*Goldberg v. Coldwell Banker, Inc.* 159 A.D.2d 684 (1990)............................................................ 7

*Golub v. Enquirer/Star Group, Inc.* 89 N.Y.2d 1074, 1076 (1997)................................................ 4

*Grasso v. Forrest Edward Employment Services*, 01-CV-3263 (AKH), 2002 WL 989528, at *8

   (S.D.N.Y. May 15, 2002) ......................................................................................................... 27

*Harte-Hanks Communications, Inc. v. Connaughton* 491 U.S. 657, 692 (1989) ......................... 21

*Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2nd Cir. 1977).................................................... 15

*Howell v. New York Post Co.*, Inc., 81 N.Y.2d 115, 121 (N.Y. 1993) .......................................... 27

*Illiano v. Mineola Union Free School Dist.,* 585 F. Supp. 2d 341, 356 (E.D.N.Y. 2008). .......... 16

*In re Bausch & Lomb. Inc.*, 592 F. Supp. 2d 323 (W.D.N.Y. 2008) ............................................ 12

*In re IBP Confidential Business Documents Litigation,* 755 F. 2d 1300 (8th Cir. 1985).............. 26

*In re New Centur*y, 588 F. Supp. 2d 1206 (C.D. Ca. 2008)........................................................... 12

*In re von Bulow*, 828 F.2d 94 (2nd Cir. 1987) ............................................................................. 23

*In re WorldCom*, 311 B.R. 151 (S.D.N.Y. 2004) ........................................................................ 12

*James v. Gannett Co.*, 40 B.Y.2d 415, 420 (N.Y. 1976) ................................................................ 4

*Karp v. Hill and Knowlton, Inc.* 631 F.Supp. 360 (S.D.N.Y. 1986)............................................. 14

*Kelly v. Schmidberger*, 806 F.2d 44, 46 (2nd Cir. 1986) ................................................................ 3

*Kirch v. Liberty Media Corp.*, No. 04-CV-0667 (NRB), 2004 WL 2181383, at *6 (S.D.N.Y.

Sept. 27, 2004) ......................................................................................................................... 13

*Lerman v. Flynt Distributing Co., Inc.*, 745 F. 2d 123, 137 (2nd Cir. 1984)................................ 19

*Levin v. McPhee*, 119 F.3d 189, 195 (2nd Cir. 1997) ...................................................................... 4

*Matovick v. Times Beacon Record Newspapers*, 46 A.D.3d 636 (2nd Dept. 2007) ...................... 16

*Nichols v. Item Publishers, Inc.,* 309 N.Y. 596, 600-601 (1956) .................................................... 4

*Noel v. Interboro Mut. Indem. Ins*. Co., 31 A.D.2d 54 (1st Dept. 1968)....................................... 24

*November v. Time, Inc.,* 13 N.Y.2d 175, 178 (N.Y. 1963)............................................................... 3

*Pavlica v. Behr*, No. 04-CV-8152, 2006 WL 1596763, at * 5 (S.D.N.Y. June 12, 2006).............. 6

*Scutti Enterprises, LLC v. Park Place Entertainment Corp.*, 322 F.3d 211, 215 (2nd Cir. 2003) 26

*Shomo v. City of New York*, 579 F.3d 176, 183 (2nd Cir. 2009)...................................................... 2

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (N.Y. 1986) ........................................................... 10

*Stuto v. Fleishman*, 164 F. 3d 820, 828 (2nd Cir 1999)................................................................. 28

*Sullivan v. Board of Educ.*, 131 A.D.2d 836 (2nd Dept. 1987) ..................................................... 25

*Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2004 WL 2339759, *13-14 (S.D.N.Y. Oct. 15, 2004) ............................................................................................................................... 9

*U.S. v. Jacobs*, 117 F.3d 82, 90 (2nd Cir. 1997) ............................................................................ 23

*U.S. v. Mendelsohn*, 896 F.2d 1183, 1188-89 (9th Cir. 1990) ....................................................... 23

*US v. Stein*, 541 F. 3d 130 (2nd Cir. 2008) .................................................................................. 13

*Volvo N. Amer. v. Men's Intern. Pro. Tennis Coun.*, 857 F.2d 55, 74-75 (2nd Cir. 1988) ............ 26

*Yiamouyiannis v. Consumer Union of the United States, Inc.*, 619 F.2d 932 (2nd Cir. 1980) ...... 20

## OTHER AUTHORITIES

*Activities of the Committee on Oversight and Government Reform, One Hundred Eleventh Congress, 2009-2010* ................................................................................................................ 18

*Securities and Exchange Commission v. Endocare, Inc. et. al.*, Civil Action No. CV 06-4502 RSWL (SSx)(C.D.Cal.). Litigation Release No. 19772 (July 25, 2006). .................................. 12

*The Conference Board Commission on Public Trust and Private Enterprise,* p. 33 (2003). ....... 11

Plaintiff Ilya Eric Kolchinsky, by his attorneys Malecki Law, hereby submits the following memorandum of law in opposition to Defendants Moody's Corporation's and Moody's Investors Services, Inc.'s ("Moody's") Motion to Dismiss.

## INTRODUCTION

Plaintiff Kolchinsky commenced this lawsuit by filing his summons and complaint with this Court on September 13, 2010. He thereafter filed an amended complaint ("Amended Complaint") on November 29, 2010. In his Amended Complaint, Mr. Kolchinsky stated claims of defamation (First Cause of Action), declaratory judgment (Sixth Cause of Action) and other common law tort claims (Second, Third, Fourth, and Fifth Causes of Action).

Defendant Moody's moved to dismiss the Amended Complaint for each of the reasons set forth in their Motion to Dismiss. Plaintiff voluntarily withdraws his claims for prima facie tort and for injurious falsehood. Other than those two claims, this Court must deny Defendant Moody's Motion to Dismiss in its entirety for the below-mentioned reasons.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to his Amended Complaint for a recitation of the facts in this case, which is annexed to the Affirmation of Jenice L. Malecki, Esq., dated January 28, 2011 ("Malecki Affirmation") as Exhibit A thereto.

## ARGUMENT

### PART I.

### THE LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6)

The "mode of pleading defamation is governed by [Fed. R. Civ. P. 8], which requires only ... a short and concise statement, detailed only to the extent necessary to enable the defendant to respond and raise the defense of res judicata if necessary showing that the pleader is

1

entitled to relief." *Geisler v. Petrocelli*, 616 F. 2d 636, 640 (2nd Cir. 1980); Fed. R. Civ. P. 8(a)(2). In entertaining a motion to dismiss, the Court is constrained to " 'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.' " *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111-112 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The Supreme Court has described that a complaint is not required to have "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, "when there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.Ct. at 1950.

**PART II.**

**THE COURT SHOULD DENY MOODY'S 12(B)(6) MOTION TO DISMISS MR. KOLCHINSKY'S DEFAMATION CLAIM**

1.      **The Alleged Defamatory Statements are Defamatory on Their Face**

When considering if a statement is defamatory or not, a court must first "give the disputed language a fair reading in the context of the *publication as a whole.*" *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (internal quotation marks omitted, emphasis in the original) (quoting *Armstrong v. Simon & Schuster, Inc.* 85 N.Y.2d 373 (N.Y. 1995)). Second, the court is "not to strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous ... A fair reading controls." *Celle*, *supra*, 209 F.3d at 177 (internal quotation marks omitted) (quoting *November v. Time, Inc.,* 13 N.Y.2d 175, 178 (N.Y. 1963)). "Finally, the words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood *by the public to which they are addressed.*" *Celle, supra,* 209 F.3d at 177 (internal question marks omitted, emphasis in the

2

original) (quoting *November, supra,* 13 N.Y.2d at 178)); *see also, Kelly v. Schmidberger,* 806 F.2d 44, 46 (2nd Cir. 1986) ("on a motion to dismiss ... the issue is not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction"). Further, "[i]f the words are reasonably susceptible of multiple meanings, some of which are not defamatory, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood." *Celle,* 209 F. 3d at 178 (citing *Davis v. Ross,* 754 F. 2d 80, 83 (2nd Cir 1985)).

Pursuant to New York State law, the general rule is that "[a] writing is defamatory ... if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him." *Nichols v. Item Publishers, Inc.,* 309 N.Y. 596, 600-601 (1956) (internal citations and quotations omitted); *Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir. 1997). "And to that listing of the defamatory should be added a writing which tends to disparage a person <u>in the way of his office, profession or trade</u>." *Nichols v. Item Publishers, Inc.,* 309 N.Y. *at 601* (emphasis added). "Even on a professional level, a defamatory meaning may attach to derogatory statements that would <u>cause apprehension about a person's ability to conduct business</u>." *Golub v. Enquirer/Star Group, Inc.* 89 N.Y.2d 1074, 1076 (1997) (emphasis added).

> It is the general rule that words not actionable in themselves may become so by being spoken of persons engaged in a particular calling or profession. Thus, words are libelous if they <u>affect a person in his profession, trade, or business</u>, by imputing to him any kind of fraud, dishonesty, misconduct, <u>incapacity, unfitness or want of any necessary qualification in the exercise thereof.</u>

*Four Star Stage Lighting, Inc. v. Merrick,* 56 A.D.2d 767, 768 (1977) (emphasis added); *see also Celle, supra,* 209 F.3d at 180 (same). To be actionable, "the statement must reflect on [the

plaintiff's] performance or be incompatible with the proper conduct of her business." *Golub,* 89 N.Y.2d at 1076.

In making this threshold inquiry, the court must consider the words in the context of their publication. *Levin,* 119 F.3d at 195 (citing *Armstrong* 85 N.Y.2d at381, *James v. Gannett Co.,* 40 B.Y.2d 415, 420 (N.Y. 1976)). The court must also consider "expressions used" and "the whole scope and apparent object of the writer." *Levin,* 119 F.3d at 195 (internal citations omitted). Despite these directives for broadly construing potentially defamatory remarks, Defendants ask this Court to consider the words spoken in this case in the vacuum of their motion to dismiss.

As alleged in detail in Mr. Kolchinsky's Amended Complaint, Moody's public campaign to discredit Mr. Kolchinsky as a professional financial analyst consisted of the following mantra of orchestrated, false statements that Moody's directed to key financial-industry publications: (a) Mr. Kolchinsky made unsupported and evolving claims, (b) Mr. Kolchinsky failed to cooperate, and (c) references to Moody's own unreleased internal reviews   and an "independent investigation" *finding* that his complaints were unsupported. The extent of these comments must be considered in view of Mr. Kolchinsky's professional role at Moody's.

The above false statements about Mr. Kolchinsky, when considered as a whole, paint a picture of a former employee/financial analyst who made baseless claims concerning his area of professional expertise (complex financial products known as CDOs), who kept materially changing his story, and who refused to cooperate in an investigation into his claims because he could not support his assertions. It is wholly reasonable that industry insiders reading Moody's false statements concerning Mr. Kolchinsky would have deemed him a disgruntled former employee who was unfit for his or any similar job.

4

The news stories carrying Defendants' statements, as well as other publicly-available information, made clear that Mr. Kolchinsky's claims of wrongdoing by Moody's were intricately-intertwined with his professional knowledge. Mr. Kolchinsky's claims covered the rating methodology and procedures associated with his specific area of expertise. His claims were analogous to an engineer's warnings about the unsafe operation of a deep oil well, which are based on his engineering knowledge. This connection between the nature of the warnings and Mr. Kolchinsky's professional expertise would have been obvious to the average reader of the *Wall Street Journal* and *Bloomberg*.

      a.     "Unsupported Claims"

Moody's repeatedly published that "Mr. Kolchinsky has made an evolving series of claims of misconduct within the company and we have conducted multiple separate reviews. In each case, Moody's found that his claims were unsupported." By falsely stating that his claims were *determined* to be "unsupported" and "without merit," Moody's directly attacked Mr. Kolchinsky's fitness and qualifications as a financial analyst in his field of expertise. Taken in context, Moody's comments would lead a reasonable reader to believe that Mr. Kolchinsky did not know what he was talking about, that he had no basis for believing the complaints he alleged, and that his complaints repeatedly changed.

Moody's urges this Court that the words "unsupported" and "without merit" suggest that Plaintiff's allegations were "mistaken, not that they were in bad faith." Moody's supports this by referring to an unreported decision of this Court finding that the following statement was not defamatory: "There is no valid basis for his threat of a suit for copyright infringement against any of you..." *Pavlica v. Behr*, No. 04-CV-8152, 2006 WL 1596763, at * 5 (S.D.N.Y. June 12, 2006). Unlike in *Pavlica*, where the plaintiff was a science professor complaining of copyright

infringement, here, Mr. Kolchinsky was a well-respected financial products professional who was said to make "unsupported claims" that were *found* to be "without merit" about a product that he directly oversaw. A reasonable listener would likely tend to believe such a person would be professionally inept and would certainly view such a person in a negative light.

In an attempt to support its claim that its characterization of Mr. Kolchinsky's claims as "evolving" was not defamatory, Moody's only points to Merriam Webster's online dictionary and Mr. Kolchinsky's own Amended Complaint. To the latter argument, Mr. Kolchinsky never admitted that his complaints "evolved," but he did state that he made several complaints, one immediately implemented by Moody's and another leading to his dismissal. As to the former argument relying on the definition of "evolved," Moody's continues to argue the word without reference to the context. By stating that Mr. Kolchinsky, a former employee, had made "an evolving series of claims of misconduct within the company" and that each were *found* to be "unsupported," Moody's calls into question his honesty, professionalism, intelligence and years of experience in the field. Again, there is no doubt that a reasonable listen would think the same.

      b.    "Failed to Cooperate"

In response to Mr. Kolchinsky's complaint about Moody's practices, Moody's published that "[t]hose [Kramer Levin] investigating lawyers have been given unfettered access to Moody's personnel and documents. Indeed, the only person who has declined to cooperate with the independent investigation is Mr. Kolchinsky." Amended Complaint, pg. 14.

Moody's false statements that Mr. Kolchinsky "declined" and "refused to cooperate" in Kramer Levin's investigation would reasonably cause readers apprehension about Mr. Kolchinsky's ability to conduct his business, his character and his fitness for his profession. Today's finance companies are highly regulated institutions and are understandably concerned

about regulatory scrutiny. In the post-Enron corporate world, one potential way to minimize the regulatory impact of legal infractions is to quickly and thoroughly investigate and remedy them. Most companies take these investigations very seriously and value their ability to fully understand what is going on within their companies. The claim that an employee would refuse to cooperate in such an investigation implies more than just poor behavior, it suggests serious insubordination and poor judgment. Such a claim goes to the core of what it takes to be a financial analyst on Wall Street and to the fitness of a professional for such a position.

Moody's cites *Goldberg v. Coldwell Banker, Inc.* 159 A.D.2d 684 (1990) for the proposition that the "failure to cooperate" language fails to rise to the level of defamation. But again, Moody's demands that the Court look only at the narrow words used, and not the context. Unlike in *Goldberg*, where an inter-office memo stating that the plaintiff's "uncooperative, abrasive and dilatory" demeanor was found not to be defamatory, here Moody's accuses Mr. Kolchinsky of insubordination and failing to follow through with his own complaint, as if he possessed no factual basis to the complaint. Surely, a reasonable listener would likely draw such a conclusion, and their resulting opinion would undoubtedly be negative.

    c.    Findings of the Purported "Independent" Investigation

In further response to Mr. Kolchinsky's complaint about Moody's practices, Moody's published that

> Because Mr. Kolchinsky raised questions about Moody's own review of the evolving claims he made, Moody's commissioned an outside law firm to conduct an independent investigation of all of Mr. Kolchinsky's assertions... The preliminary findings of the independent investigators are completely consistent with Moody's own compliance review – namely, that Mr. Kolchinsky's claims of misconduct are unfounded. Moody's is confident in the integrity of its people and its processes.

Amended Complaint, pg. 16.

When expressed in context, where Moody's mentioned Mr. Kolchinsky's evolving claims, Moody's engagement of an alleged "independent investigation," and such investigation resulting in a *finding* that Mr. Kolchinsky's claims of misconduct "are unfounded," a reasonable listener would assume that Mr. Kolchinsky was incapable and unreliable, and would maintain a negative opinion of him.   In this way, Moody's false claim that the Kramer Levin investigation was "independent" served to reinforce the above false statements about Mr. Kolchinsky, his complaints and the actual results of his complaints.

Moody's false statements about Mr. Kolchinsky's professional capacity were defamatory. New York offers broad protection to statements questioning a plaintiff's professional capacity. *See Davis*, 754 F. 2d at 80 (holding the defendant's statement regarding a former employee, that her "work or their personal habits are not acceptable to me," to be defamatory).   With regard to financial analysts, false statements about their ability to conduct themselves professionally are defamatory. *See, e.g.*, *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2004 WL 2339759, *13-14 (S.D.N.Y. Oct. 15, 2004) (holding that statements tending to tarnish a securities analyst in his profession may constitute a claim for defamation); *see also*, *Roffman v. Trump*, 754 F. Supp. 411 (E.D. Pa. 1990) (holding statements by a defendant that the plaintiff, a financial analyst, *inter alia*, was a "bad analyst" and a "very unprofessional guy," were actionable).   For these reasons, each of Moody's publicly published comments were defamatory on their face.

## 2.   Moody's Defamatory Statements Are Not Protected Statements Of Opinion.

The Second Circuit has held that the relevant inquiry in determining whether a statement is an "opinion" or "fact" depends on:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the

8

communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might 'signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.'

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, n7 (2d. Cir. 2006) (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (N.Y. 1986)).

a.    Precise Meaning and Able to be Characterized as True or False

Moody's false statements that Mr. Kolchinsky's claims were unsupported and without merit are actionable statements. "Unsupported" and "without merit" have precise meanings which are readily understood. Furthermore, whether Moody's, in fact, determined that Mr. Kolchinsky's claims were "unsupported" and "without merit" can be proven true or false. The inquiry is a historical one: what was Moody's determination regarding the merits of Mr. Kolchinsky's claims during the relevant period. Here, it is evident that Moody's actually concluded that Mr. Kolchinsky's claims had merit because, as he pled, they adopted his recommendations for remedying deficiencies in their ratings methods and procedures, in many cases specifically referencing his exact rationale. In fact, at the time he logged his complaints, he gave overwhelming support, both documentary and analytical.

Moody's boldly asserts that "an involved party's comment characterizing an ongoing controversy will be construed, both by an average reader and by the courts, as a statement of opinion." The statements at issue, however, did not pertain to an ongoing controversy. Rather, they concerned conclusions that Moody's had allegedly reached after conducting both multiple internal reviews and an alleged thorough, independent, third-party investigation. An average reader would, therefore, assume that the conclusions reached from these investigations were factual determinations rather than mere opinions.

9

Both "independent investigation" and "cooperation" are also precise terms commonly used in corporate governance. They have been repeatedly litigated and proven true or false in courts of law. By using these terms in their statements, Moody's intended to convey their precise meanings in order to persuade readers that Moody's reaction and response to Mr. Kolchinsky's claims was legitimate, and that Mr. Kolchinsky's allegations and conduct were illegitimate.

Leading corporate policy makers have promulgated specific guidance which defines the characteristics of an "independent investigation." For example, the Conference Board has recommended the following:

> Special counsel retained to conduct independent investigations with likelihood to implicate company executives should report directly to the board or an appropriate committee of the board and should not be an individual or a firm that the company regularly uses as outside counsel or that derives a material amount of revenues from the company.

The Conference Board Commission on Public Trust and Private Enterprise, p. 33 (2003), annexed to the Malecki Affirmation as Exhibit "B" thereto.

A number of cases have also probed the adequacy of "independent investigations." *See, e.g., In re Bausch & Lomb. Inc.*, 592 F. Supp. 2d 323 (W.D.N.Y. 2008); *In re New Century*, 588 F. Supp. 2d 1206 (C.D. Ca. 2008); and *In re WorldCom*, 311 B.R. 151 (S.D.N.Y. 2004). In addition, the SEC has sanctioned a company for falsely stating that its investigation was independent. *See, Securities and Exchange Commission v. Endocare, Inc. et. al.*, Civil Action No. CV 06-4502 RSWL (SSx) Litigation Release No. 19772 (C.D. Cal. July 25, 2006), annexed to the Malecki Affirmation as Exhibit "C" thereto.

Moody's own proffered definition of "independent counsel" from Black's Law Dictionary—one "hired to provide an unbiased opinion about a case or conduct an impartial

10

investigation"—makes it clear that "independent" is a precise term, which can be proven true or false.

"Cooperation" is likewise a common and precise term in government investigations in the corporate context. The U.S. Department of Justice[1] and the SEC[2] have both issued guidelines on what it takes to "cooperate" with their investigations, and aspects of these guidelines have been litigated. *See, e.g.*, *US v. Stein*, 541 F. 3d 130 (2nd Cir. 2008) (holding that cooperation with a federal investigation cannot include a *de facto* waiver of the right to counsel). If the existence or lack of "cooperation" can be determined for purposes of a government investigation, it can also be determined for purposes of a corporation's internal investigation. Accordingly, Mr. Kolchinsky's alleged lack of "cooperation" can be proven true or false in this instance.

    b.    Examination of Full Context

Taken together, each of the comments published by Moody's were expressed without hesitation. Moody's also did not include "I believe…," "Hence, …," "I'd say …," "I hope …" words that suggest the presentation of an opinion. *Kirch v. Liberty Media Corp.*, No. 04-CV-0667 (NRB), 2004 WL 2181383, at *6 (S.D.N.Y. Sept. 27, 2004), *rev'd on other grounds, Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006). Each term, that Kolchinsky's complaints were "unsupported," were "evolving," were "without merit," that Mr. Kolchinsky "failed to cooperate," and that Moody's performed their "independent investigation" resulting in his

---

[1]    *See*, Memorandum from Mark Filip, Deputy Att'y Gen., to Heads of Dep't Components and U.S.Atty's, Principles of Federal Prosecution of Business Organizations, at 9 (Aug. 28, 2008) (the Filip Memorandum) http://www.usdoj.gov/dag/readingroom/dag-memo-08282008.pdf (discussing cooperation and disclosure by corporations), annexed to the Malecki Affirmation at Exhibit "D."

[2]    *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions*, Release No. 44969, Oct. 23, 2001, (the Seaboard Memorandum) available at http://www.sec.gov/litigation/investreport/34-44969.htm annexed to the Malecki Affirmation at Exhibit "E."

complaints being rendered "unfounded," hold a precise meaning, which can each be characterized as true or false (i.e. Moody's investigation was either "independent" or it was not; Mr. Kolchinsky's complaints were either "unfounded" or they were not). Moreover, there was no litigation that Moody's was defending itself against and no forum for the public to make its own decisions based upon evidence or the decision of a judge or jury. The alleged "independent investigation" was never released and the public could not form its own opinion.

When considered together and in their entirety, there can be little doubt that Moody's published their statements to publicly discredit Mr. Kolchinsky, both as a professional and as a whistleblower. These statements, published in various respected news periodicals (The Wall Street Journal, New York Times, Bloomberg, etc.), were presented to the public as facts, not opinions.

Finally, the full context of the communications and the broader social context and surrounding circumstances of the false statements did not suggest to readers that Moody's was merely expressing its opinions rather than facts. The readers of the *Wall Street Journal* and *Bloomberg* , to whom Moody's directed its false statements, are a highly-sophisticated audience who readily understood the corporate governance concepts being expressed. The statements were made both before and after Mr. Kolchinsky's testimony to Congress regarding the Defendants' rating practices. Moody's alleged misconduct had both civil and criminal implications. Accordingly, Moody's needed to absolve itself of any hint of wrongdoing. To do so, it needed to make sure that both regulators and the financial industry believed its attacks against Mr. Kolchinsky's credibility—that they adopted Moody's false statements regarding Mr. Kolchinsky's professional competence as facts, not mere opinions. The broader social context

and surrounding circumstances of the false statements thus demonstrate that Moody's statements were presented as facts, and that Moody's intended for readers to understand them as such.

The cases relied upon by Moody's are inapposite. In *Karp v. Hill and Knowlton, Inc.* 631 F.Supp. 360 (S.D.N.Y. 1986), the court determined that the defendant's efforts to summarize the plaintiff's complaint as one alleging fraud, even though no claim for fraud was made, was a statement of opinion. Here, Moody's did not attempt to summarize Mr. Kolchinsky's claims, it only attempted to discredit those claims. Moody's did not publish what Mr. Kolchinsky's claims were; it only said that all of his claims were "unfounded," "evolving," "unsupported," and "without merit." It never tried to lead anyone to believe that they believed he was simply mistaken, or why, as Moody's now tries to lead this Court to erroneously believe – just the opposite. *Cytyc Corp. v. Neruomedical Systems, Inc.* is also distinguishable. In *Cytyc Corp.*, the court made clear that the statement in question cited by Defendants was opinion because "Cytyc[] did not say that the petitions are necessarily frivolous, only that Cytyc believed them to be so." 12 F. Supp. 2d 296, 302 (S.D.N.Y. 1998) (emphasis added). Here, Moody's did not state they "believed" Mr. Kolchinsky's claims were unsupported or without merit, but pointed to an unreleased "finding" in an alleged "independent investigation."

Alternatively, if the court determines that the Defendant's statements were opinions, they are still actionable because the underlying facts used in rendering the opinion were not known to the reader. "Liability for libel may attach ... when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader." *Davis v. Ross,* 754 at 85 (citing *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir. 1977)). "The Hotchner court further stated that "[o]pinions based on false facts are actionable ... against a defendant who had knowledge of the falsity or probable

falsity of the underlying facts.'" *Id.* The facts and the results of the investigations and reviews on which Moody's relies were not known to the reader. The Kramer Levin report was never released to the public and neither were the reports of the previous reviews. Hence, a reasonable reader can infer that Moody's was privy to facts about Mr. Kolchinsky on which it relied and is liable for their contents.

**3.   Moody's Defamatory Statements Were Not "Substantially True"**

Moody's attempts to avoid defamation by claiming their statements were "substantially true." The test of whether a statement is substantially true is "whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Matovick v. Times Beacon Record Newspapers*, 46 A.D.3d 636 (2d Dept. 2007) (internal citation omitted). Yet, "[t]he publisher of a libel may not, of course, escape liability by veiling a calumny under artful or ambiguous phrases...." *Nichols v. Item Publishers, Inc.*, 309 N.Y. at 601. The truth or substantial truth of a case is at its heart a factual inquiry, and "it is not appropriate, at the pleading stage, for the Court to decide the parties' competing factual claims." *Illiano v. Mineola Union Free School Dist.*, 585 F. Supp. 2d 341, 356 (E.D.N.Y. 2008). (citing *Church of Scientology International v. Behar*, 238 F.3d 168, 173 (2nd Cir. 2001)). "Furthermore, since the Court accepts plaintiff's allegations as true [at the motion to dismiss stage], it assumes that defendants' statements are false..." *Treppel*, 2004 WL 2339759, * 10.

Mr. Kolchinsky set forth in this Amended Complaint that Moody's published that Mr. Kolchinsky's claims evolved, were unsupported, were without merit, that he refused to cooperate, and that Kramer Levin was an independent investigator that *found* his reports without merit. Each of these statements was published in an orchestrated fashion and context in order to discredit Mr. Kolchinsky. Mr. Kolchinsky then pled in his Amended Complaint that while

14

attempting to discredit him, Moody's went on to implement the changes he recommended. Thus, a reader would have a very different opinion depending on their review of Moody's statements as published (that, in essence, Mr. Kolchinsky should not be trusted) and the actual facts, as pled (that while discrediting him, Moody's incorporated Mr. Kolchinsky's recommendations).

Moody's claims that "the statements assert only that Plaintiff's allegation of <u>misconduct</u> by Moody's were unfounded, not that his policy recommendations were unsupported." (emphasis in the original). In other words, Moody's is asking the Court to believe that the recommendations it adopted existed in a vacuum and were wholly separate from the misconduct noted by Mr. Kolchinsky. Yet, "recommendations" are generally not proposed or implemented without a need or a perceived inadequacy. Words cannot be so minced when dealing with public statements.

In this case, the "misconduct" or "impropriety" lay in the creation of rating methodologies and the procedures for deriving ratings of CDOs; and Mr. Kolchinsky's recommendations, which Moody's adopted, i.e., corrected problems that contributed to one of this country's largest financial collapses. Moody's adoption of these recommendations amounted to an implicit admission that its methods and procedures were improper, particularly in light of what Mr. Kolchinsky reported.

As to the independence of Moody's counsel, Kramer Levin, there is absolutely no evidence that they were hired "to provide an unbiased opinion about a case or conduct an impartial investigation", as Moody's claims. Legal ethics and rules of professional conduct require that retained counsel act as an advocate for the client unless the scope of the representation is defined otherwise. Kramer Levin was not hired by the independent members of the Board of Directors, and the engagement letter indicates only a normal advocate-client

15

relationship, simply stating that Kramer Levin will "represent" Moody's. The Committee on Oversight and Government Reform, which had the opportunity to question Moody's and Kramer Levin, refers to the work of the latter as the *"so-called 'independent audit.'"* *See,* Activities of the Committee on Oversight and Government Reform, H.R. Conf. Rep. No. 111-705 (2009-2010), p. 21 (emphasis added).[3]

Finally, Moody's claims that its statement that Mr. Kolchinsky refused to cooperate is substantially true because Mr. Kolchinsky "refused" or "declined' to do something. The "sting" of the statement lies in the word "cooperation" – something that every employee is expected to do. Moody's implies that the failure to do <u>anything</u> that is asked of an employee constitutes a lack of cooperation. However, reasonable readers would understand that there are limits on what cooperation can entail. An employee is not expected to commit a crime or to injure himself. As describe above, there are legal boundaries to cooperation in corporate investigations. Certainly, these limits include waiving the right to counsel or participating in a deposition where the opposite counsel is acting in violation of legal ethics rules.

**4.    Plaintiff is a Private Figure and is not Required to Plead Actual Malice**

    a.    Because Plaintiff is a Private Figure, He Need Not Plead Actual Malice

Mr. Kolchinsky is a private defamation plaintiff and thus need not plead actual malice. He was thrust into the public arena after Moody's suspended him. Prior to that time, he repeatedly rebuffed efforts by reporters to contact him. Even after his suspension, Mr. Kolchinsky did not seek publicity and he had to be "persuade[d]" to testify before the House Committee. *See,* Amended Complaint, ¶ 32. Moreover, each of Mr. Kolchinsky's complaints to

---

[3]    This report, available at http://www.gpo.gov/fdsys/pkg/CRPT-111hrpt705/pdf/CRPT-111hrpt705.pdf.,was only made available on the web site on January 3, 2011.

Moody's were made internally, not publicly.  Thus, like in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974) Mr. Kolchinsky "did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." *Id.*

It is Moody's burden to establish that Mr. Kolchinsky is a limited purpose public figure, a burden they do not carry.  In order to show that Mr. Kolchinsky is a limited purpose public figure:

> A defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distributing Co., Inc.*, 745 F. 2d 123, 137 (2nd Cir. 1984) (emphasis added); *Contemporary Mission, Inc. v. New York Times*, 842 F.2d 612, 617 (2nd Cir. 1988) (same). Moody's does state this test, but they misleadingly omit the above underlined portion of the first prong of the test.  Moody's avoids this element of the test because it knows that Mr. Kolchinsky never invited public attention to his views prior to the incident that is the subject of this litigation.  Indeed, the Defendants' comments were made prior to his appearance before the House Committee.

Moody's cites *Yiamouyiannis v. Consumer Union of the United States, Inc.*, 619 F.2d 932, 940 (2d Cir. 1980), to support its contention that Mr. Kolchinsky is a limited purpose public figure.  The plaintiff in *Yiamouyiannis*, however, was deemed to be a limited purpose public figure for good reason:

> Dr. Yiamouyiannis is and for many years has been an active opponent of the fluoridation of public water supplies, and since 1974 has been a paid employee of the National Health Federation, which is an organization that for over twenty years has been actively opposed to fluoridation.  Dr. Yiamouyiannis has also authored over fifteen articles on fluoride and is a coeditor of a quarterly, Fluoride, published by the International Society for Fluoride Research....

*Id.*

Mr. Kolchinsky is simply a financial analyst who was forced out by his employer—after he raised legitimate concerns about his employer's misconduct—who was solicited to speak to Congress about Moody's wrongdoing. Moreover, unlike here, the plaintiff in *Yiamouyiannis* invited public attention prior to the incident that was the subject of litigation in that case.

Since Mr. Kolchinsky did not invite public attention to his views prior to the incident that is the subject of litigation or voluntarily inject himself into a public controversy, he is not a limited purpose public figure under the *Lerman* test.

### b.    Even if Plaintiff is a Limited Purpose Public Figure, He Has Adequately Pled Actual Malice

Even if this Court finds that Mr. Kolchinsky is a limited public figure, he adequately pled actual malice in his Amended Complaint. "Actual malice requires proof that the publisher had a subjective awareness of either falsity or probable falsity of the defamatory statement, or acted with reckless disregard of the its truth or falsity." *Celle* 209 F.3d at 182. Additionally, the "purposeful avoidance of the truth" may also constitute actual malice. *Harte-Hanks Communications, Inc. v. Connaughton* 491 U.S. 657, 692 (1989). "Actual malice can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." *Celle, supra*, 209 F.3d at 183 (internal citations omitted).

As an initial matter, "...resolution of the falsity and actual malice inquiries typically requires discovery." *Church of Scientology International* 238 F. 3d at 173. Taking his allegations as true for purposes of this Motion to Dismiss, Mr. Kolchinsky has adequately pled that Moody's acted with actual malice. Moody's statements that Mr. Kolchinsky's claims were

"unsupported" were made with the knowledge that in fact they were "carefully considered" and "adopted." (Am. Compl. ¶ 52). Likewise, Moody's was aware that it had hired Kramer Levin to represent it, not to conduct an independent investigation (Am. Compl. ¶ 79). Finally, Moody's was aware that Mr. Kolchinsky had, in fact, cooperated with their investigation (Am. Compl. ¶ 67-72). Additionally, Mr. Kolchinsky alleged that Moody's "acted in willful ignorance and reckless disregard of contradictory evidence in its possession." (Am. Complaint, ¶ 82). These statements adequately allege actual malice. There can be little dispute that Mr. Kolchinsky's reputation was thrown under the proverbial bus to save Moody's own reputation.

5.  **Plaintiff has Pled Facts Sufficient to Establish Special Damages or Defamation *Per Se***

Under New York law, a statement that "tend[s] to injure plaintiff in the conduct of his trade, business or profession" is [defamation] *per se*, and, therefore, actionable without an allegation or proof of special damages. *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998); *Celle,* 209 F.3d at 179 (same). Moody's claims that their statements did not tend to injure Mr. Kolchinsky in the conduct of his trade, business or profession because Moody's, together with Kramer Levin, merely disagreed with Mr. Kolchinsky's conclusions and Mr. Kolchinsky did not cooperate with the "independent investigation." It is clear that Moody's fails to see the forest for the trees.

Mr. Kolchinsky's allegations that Moody's published that he stated "evolving" claims, his claims were found to be "unsupported" and "without merit," that he "refused to cooperate," and that Kramer Levin (who made the "findings") was an "independent investigator." Each of these statements were published in order to discredit Mr. Kolchinsky professionally as further described in Part II.1., above. Thus, Moody's did much more than publicly "disagree" with Mr. Kolchinsky. Instead, Moody's systematically disseminated that Mr. Kolchinsky's work product

was inadequate and baseless and in this manner tended to injure Mr. Kolchinsky "in the conduct of his trade, business or profession."

## PART III.

### THE COURT SHOULD DENY DEFENDANT McDANIEL'S MOTION TO DISMISS FOR THE REASONS SET FORTH IN PLAINTIFF'S MEMORANDUM IN OPPOSITION THERETO

For the reasons set forth at length in Mr. Kolchinsky's Opposition to Defendant McDaniel's Motion to Dismiss, Defendant McDaniel's allegation that Moody's retained an "independent law firm" can form the basis of a defamation claim because the statement was "of and concerning" Mr. Kolchinsky and the statement is not absolutely privileged under New York Civil Rights Law § 74. *See*, Plaintiff's Memorandum in Opposition to Defendant McDaniel's Motion to Dismiss, submitted herewith.

## PART IV.

### PLAINTIFF'S DECLARATORY JUDGMENT CLAIM IS ADEQUATELY PLED

Moody's properly recites the law as to the "fairness doctrine," which states that extrajudicial waivers of an attorney-client privileged communication is a waiver only to that actually stated, and not necessarily to the whole communication. *See*, *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987). However, it is equally true that "[a]n inaccurate statement of a privileged communication waives the privilege with respect to that communication." *U.S. v. Jacobs*, 117 F.3d 82, 90 (2d Cir. 1997) (citing *U.S. v. Mendelsohn*, 896 F.2d 1183, 1188-89 (9th Cir. 1990)). Mr. Kolchinsky's Amended Complaint states just that: "[t]he relationship between Moody's and … Kramer Levin … was that of client and defense advocate and the reports of Mr. Kolchinsky were supported by evidence and led to the adoption of his recommendations designed to cite the believed illegal activity," Amended Complaint, ¶ 37(c) and ¶ 37(c), n. 4; Upon information and

belief, the Defendants did not accurately convey the full findings of the Kramer Levin report in their statements about Mr. Kolchinsky. Amended Complaint, ¶ 91.

Because Mr. Kolchinsky adequately pled that Moody's inaccurately stated a privileged communication, Moody's has waived its privilege as to the entire communication, which this Court should order produced.

## PART V.

### PLAINTIFF'S REMAINING CLAIMS ARE ADEQUATELY PLED

Plaintiff withdraws his claims for prima facie tort and injurious falsehood. However, Plaintiff's remaining claims for tortious interference with business relations and economic advantage and intentional infliction of emotional distress are not duplicative of his defamation claim, for the reasons stated herein.

**1.     Tortious Interference with Business Relations and Economic Advantage**

Moody's cites *Noel v. Interboro Mut. Indem. Ins*. Co., 31 A.D.2d 54 (1st Dept. 1968) for the proposition that Mr. Kolchinsky's tortious interference with business relations and economic advantage (Second Cause of Action). The *Noel* Court actually dismissed the plaintiff's tortious interference claim because it was actually a claim for defamation, and thus subject to a one year statute of limitations, but pled as tortious interference to obtain a longer six year statute of limitations. *Id.* at 55-56. As such, Moody's has failed to properly raise this issue for review in its motion to dismiss.

Even if this Court chooses to entertain Moody's deceptively researched argument, it should still find that Mr. Kolchinsky's tortious interference claim is not duplicative of his defamation claim. Plaintiff's tortious interference claim, pleaded separately from his defamation claim, sets forth separate factual allegations, including but not limited to that "Defendants knew

21

or had reason to know that the business community in which Mr. Kolchinsky operates is tightly knit…"; Defendant Moody's constitutes one half of an oligopoly for rating financial companies… constitute an unfair trade practice"; "Defendants disseminated false and defamatory information to the public about Mr. Kolchinsky in an attempt to induce those individuals to avoid business relationships with him"; and "Defendants' ongoing acts of tortious interference constitute transgressions of a continuing nature, for which Plaintiff has been damaged." Amended Complaint, ¶¶ 99, 100, 102, 103.

### 2.    Intentional Infliction of Emotional Distress

Contrary to Moody's Motion to Dismiss, New York courts permit plaintiffs to bring defamation claims alongside claims for intentional infliction of emotional distress. *See, Sullivan v. Board of Educ.*, 131 A.D.2d 836 (2d Dept. 1987) ("the plaintiff has stated valid causes of action sounding in defamation [and] intentional infliction of emotional distress…").

### PART VI.

### PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO
### ESTABLISH HIS REMAINING CLAIMS

### 1.    Plaintiff Adequately Stated his Tortious Interference with Business Relationships and Economic Advantage Claim

To state a claim for tortious interference with business relationships and economic advantage, Mr. Kolchinsky must allege that "(i) [he] had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enterprises, LLC v. Park Place Entertainment Corp.*, 322 F.3d 211, 215 (2d Cir. 2003). Moody's only takes issue with the first element of the claim, whether Mr. Kolchinsky adequately alleged a business relationship with a third party.

Mr. Kolchinsky has plead interference with potential employment opportunities in the financial services industry. This pleading is sufficiently specific because of the Defendant's monopolistic relationship with respect to those companies (Defendants are the only providers of "Moody's ratings" to the industry and these companies cannot acquire "Moody's ratings" elsewhere and they require Moody's ratings to operate). Courts have recognized that a monopoly provider creates a large number of prospective relationships. *Volvo N. Amer. v. Men's Intern. Pro. Tennis Coun.*, 857 F.2d 55, 74-75 (2nd Cir. 1988). The requirement for specificity obviously exists to frame the complaint and give adequate notice to the Defendant. In the case of a monopoly provider, these relationships are evident on their face. Additionally, courts have recognized that the situation of the defamed whistleblower may be unique. *See, In re IBP Confidential Business Documents Litigation*, 755 F. 2d 1300 (8th Cir. 1985). This is especially so given the Defendant's monopolistic position, as described above.

The Defendants do not contend that Mr. Kolchinsky has not sought to enter into employment relationships with the issuers it rates, or provides with ratings services or ratings feeds. Hence the specific, albeit numerous, specific relationships have been adequately pled.

**2.    Plaintiff Adequately Stated his Intentional Infliction of Emotional Distress Claim**

To state a claim for intentional infliction of emotional distress, Mr. Kolchinsky must allege "(i) extreme and outrageous conduct; (ii) intention to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Grasso v. Forrest Edward Employment Services*, 01-CV-3263 (AKH), 2002 WL 989528, at *8 (S.D.N.Y. May 15, 2002) (quoting *Howell v. New York Post Co.*, Inc., 81 N.Y.2d 115, 121 (N.Y. 1993)). Moody's only makes issue of the first element of a claim for IIED, namely "extreme and outrageous conduct." Mr.

23

Kolchinsky makes these allegations in his Amended Complaint. Amended Complaint, ¶ 105-106.

Mr. Kolchinsky has certainly pled "extreme and outrageous conduct." The Plaintiff was a loyal employee who tried to ensure that the mistakes of the financial crisis were not repeated again. "Mr. Kolchinsky worked, in good faith, internally with various groups to ensure that future ratings methodologies and procedures are robust and did not run afoul of the law" (Amended Complaint ¶¶ 17-23). In response, Moody's repeatedly retaliated against him and finally suspended him. Not content with depriving him of livelihood, the Defendants embarked on a campaign of lies and distortions to discredit Mr. Kolchinsky in the eyes of his peers and potential employers.

New York law requires "some combination of public humiliation, false accusations of … heinous conduct, … permanent loss of employment, or conduct contrary to public policy…" to constitute extreme and outrageous conduct. *Stuto v. Fleishman*, 164 F. 3d 820, 828 (2nd Cir 1999). Mr. Kolchinsky has pled these elements.

## CONCLUSION

For the foregoing reasons, Plaintiff Ilya Eric Kolchinsky respectfully requests that this Court deny Moody's Motion to Dismiss in its entirety, and for such other and further relief as this Court deems just under the circumstances.

Dated: New York, New York
      January 28, 2011

MALECKI LAW

_____
Jenice L. Malecki (JM 2871)
Adam M. Nicolazzo (AN 1583)
*Attorneys for Plaintiff*
11 BROADWAY, SUITE 715
NEW YORK, NEW YORK 10004
(212) 943-1233 TELEPHONE
(212) 943-1238 FACSIMILE

To:    Rene M. Johnson, Esq.
        Joseph A. Nuccio, Esq.
        Morgan, Lewis & Bockius LLP
        502 Carnegie Center
        Princeton, NJ 08540
        (609) 919-6600
        *Attorneys for Defendants*