*Law Offices*
**MORGAN, LEWIS & BOCKIUS LLP**
**(Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, NJ  08540-6241**
**609.919.6600 / 6701 (fax)**
**Rene M. Johnson**
**Joseph A. Nuccio**
**Attorneys for Defendants**
**Moody's Corporation, Moody's Investors Service, Inc.,**
**and Raymond McDaniel**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILYA ERIC KOLCHINSKY,<br><br>Plaintiff,<br><br>v.<br><br>MOODY'S CORPORATION, MOODY'S INVESTORS SERVICE, INC., and RAYMOND MCDANIEL,<br><br>Defendants. | Civil Action No. 10-6840 (PAC)<br><br>*ELECTRONICALLY FILED* |

**DEFENDANTS MOODY'S CORPORATION AND MOODY'S INVESTORS SERVICE, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

On the Brief:

René M. Johnson
Joseph A. Nuccio

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.    ARGUMENT..................................................................................................................2

    A.    The Statements At Issue Are Non-Defamatory On Their Face .............................2

    B.    The Alleged Defamatory Statements Are Protected Statements Of Opinion........3

    C.    If The Statements Contain Verifiable Facts, They Are Substantially True ...........5

    D.    Plaintiff Is A Limited Purpose Public Figure But Has Not Pleaded Facts Sufficient To Establish Actual Malice.................................................................7

    E.    Plaintiff Has Not Pleaded Defamation Per Se Or Alleged Special Damages........8

    F.    Plaintiff's Declaratory Judgment Claim Must Be Dismissed................................8

    G.    Plaintiff's Tortious Interference Claim Must Be Dismissed..................................9

    H.    Plaintiff's Intentional Infliction of Emotional Distress Claim Must Be Dismissed............................................................................................................10

III.    CONCLUSION.............................................................................................................11

## TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)...........................................................................................................8

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)...............................................................................................................6

Chao v. Mount Sinai Hosp.,
No. 10-2869, 2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010) .........................................9

Contemporary Mission, Inc. v. The New York Times Co.,
842 F.2d 612 (2d Cir. 1988)..................................................................................................7

Cytyc Corp. v. Neuromedical Sys., Inc.,
12 F. Supp. 2d 296 (S.D.N.Y. 1998).................................................................................4, 5

Davis v. Ross,
754 F.2d 80 (2d Cir. 1985)....................................................................................................2

Donofrio-Ferrezza v. Nier,
No. 04-1162, 2005 WL 2312477 (S.D.N.Y. Sept. 21, 2005) ...........................................3

In re IBP Confidential Business Documents Litig.,
755 F.2d 1300 (8th Cir. 1985) ............................................................................................10

Independent Living Aids, Inc. v. Maxi-Aids, Inc.,
981 F. Supp. 124 (E.D.N.Y. 1997) .....................................................................................3

Levin v. McPhee,
119 F.3d 189 (2d Cir. 1997)..................................................................................................5

Karp v. Hill and Knowlton Inc.,
631 F. Supp. 360 (S.D.N.Y. 1986).......................................................................................5

Krepps v. Reiner,
588 F. Supp. 2d 471 (S.D.N.Y. 2008)..................................................................................9

Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin,
418 U.S. 264 (1974)........................................................................................................13, 14

Roffman v. Trump,
754 F. Supp. 411 (E.D. Pa. 1990) ........................................................................................2

Scolnick v. Correctional Med. Servs.,
132 F. Supp. 2d 1116 (N.D. Ill. 2001) ...............................................................................3

St. Amant v. Thompson,
390 U.S. 727 (1968) ...........................................................................................................7

Stuto v. Fleishman,
164 F.3d 820 (2d Cir. 1999) .............................................................................................10

Treppel v. Biovail Corp.,
No. 03-3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ..............................................2

U.S. v. Jacobs,
117 F.3d 82 (2d Cir. 1997) .................................................................................................9

Volvo N. Amer. v. Men's Intern. Pro. Tennis Coun.,
857 F.2d 55 (2d Cir. 1988) ...............................................................................................10

### STATE CASES

El-Amine v. Avon Prods., Inc.,
293 A.D.2d 283 (1st Dep't 2002) ......................................................................................3

Gurda v. Orange Ct. Pub. Div. of Ottaway Newspapers, Inc.,
81 A.D.3d 120 (2d Dep't 1981), rev'd in part, 56 N.Y.2d 705 (1982) .............................3

Stephan v. Cawley,
24 Misc.3d 1204(A) (N.Y. Sup. Ct. 2009) ........................................................................8

Sullivan v. Board of Educ.,
131 A.D.2d 836 (2d Dep't 1987) .....................................................................................10

Techcon Contracting Inc. v. Village of Lynbrook,
5 Misc.3d 1004(A)( (N.Y. Sup. Ct. 2004) .........................................................................2

Vasarhelyi v. New School for Social Research,
230 A.D.2d 658 (1st Dep't 1996) ......................................................................................8

### OTHER AUTHORITY

New York Rules of Professional Conduct 2.1 ................................................................................6

I.     **INTRODUCTION**

Plaintiff's opposition fails to identify a single case in which liability for defamation has been imposed based upon statements resembling those here at issue. This conspicuous omission is scarcely surprising given that, under Plaintiff's expansive view of defamation, an employer would incur liability for routine, public statements of disagreement (no matter how temperately expressed) with any public accusations by a former employee. That is simply not the law. As explained in Moody's moving brief and further below, Plaintiff's defamation claim is subject to numerous deficiencies that require dismissal as a matter of law.

First, he fails to show that Moody's statements are defamatory; indeed, he never actually discusses the press articles at issue (the "Articles") nor does he provide their full context. Second, he ignores the many cases finding statements indistinguishable from Moody's to be non-actionable opinions. Third, the Articles and his Complaint reveal that, to the degree Moody's statements contain any facts, they are true. Fourth, the Articles show that Plaintiff is a limited purpose public figure, and he fails to adequately plead "actual malice." Finally, his attempt to establish defamation per se replaces Moody's *actual* statements with ones of his own invention.

Plaintiff's other claims fare no better. His declaratory judgment claim – premised on his "belief" that Moody's lied about the results of Kramer Levin's investigation – is facially implausible, contradicted by his own allegations, and unsupported by the cases he cites. His own citations show that his tortious interference claim cannot stand as it duplicates his defamation claim and he fails to identify any business relations with which Moody's allegedly interfered. And his IIED claim is duplicative and fails as Moody's actions do not even approach the level of "outrageousness" required. Accordingly, Plaintiff's claims should be dismissed with prejudice.[1]

---

[1]   Moody's also incorporates by reference Raymond McDaniel's Reply Memorandum in support of his Motion to Dismiss, submitted herewith.

## II.     ARGUMENT

### A.     The Statements At Issue Are Non-Defamatory On Their Face.

Plaintiff's overheated prose cannot alter the innocuousness of the statements at issue: that Plaintiff's internal complaints were "evolving," that Moody's investigated Plaintiff's complaints and found them to be "unsupported" and "without merit," that Moody's hired a law firm to conduct an "independent investigation," and that Plaintiff refused to cooperate with that investigation.  Moody's publicly disagreed with Plaintiff's public charges, but did not attack Plaintiff's honesty, integrity, or motivation.  Plaintiff identifies <u>no case</u> in which similar comments have been found to be defamatory.  <u>See, e.g.</u>, <u>Techcon Contracting, Inc. v. Village Of Lynbrook</u>, 5 Misc.3d 1004(A) (N.Y. Sup. Ct. 2004) ("[A] general reflection upon a plaintiff's character or qualities that is not incompatible with the proper conduct of the plaintiff's business and the mere expression of unhappiness with plaintiff's fulfilling her duties, is not defamatory.")

Instead, Plaintiff argues – without once citing the Articles – that Moody's defamed him by "directly attack[ing his] qualifications as a financial analyst in his field of expertise." (Opp. at 5.)  This assertion simply ignores the fact that the allegedly defamatory statements explicitly regarded Plaintiff's <u>allegations</u> of misconduct and improprieties by Moody's – <u>not</u> Plaintiff's professional capacity or character.  (<u>See</u> Amended Complaint ("Compl.") ¶¶ 47-50, 65-66, 74.)  Simply put, the mere fact that Moody's disagrees with Plaintiff's accusations of criminal conduct does not expose him to contempt or ridicule.  (<u>See</u> Mem. at 6-8.)[2]

---

[2]  The cases Plaintiff cites regarding defamation of "professional capacity" are inapposite as the statements there at issue entailed direct accusations of misconduct by the plaintiff.  <u>See</u> <u>Treppel v. Biovail Corp.</u>, No. 03-3002, 2004 WL 2339759, at *1-3, *13-14 (S.D.N.Y. Oct. 15, 2004) (charges of unethical conflict of interest and "illegal" conduct by analyst); <u>Davis v. Ross</u>, 754 F.2d 80, 83-84 (2d Cir. 1985) (letter implying employee was fired for cause); <u>Roffman v. Trump</u>, 754 F. Supp. 411, 413-414 (E.D. Pa. 1990) (ad hominem accusations that plaintiff was "a bad analyst" with an unethical conflict of interest, who offered to tout stocks in exchange for business from issuer).

**B.     The Alleged Defamatory Statements Are Protected Statements Of Opinion.**

As Moody's explained in its opening brief, courts have repeatedly held that statements commenting on the merits of another party's accusations are non-actionable opinion – particularly in the context of an ongoing controversy (such as the controversy triggered by Plaintiff's published attack on Moody's).[3]  In response, Plaintiff has failed to cite a single relevant case where similar statements were held actionable, nor has he even attempted to distinguish the cases cited by Moody's in support of its argument.[4]  Moody's statements are, in short, nearly identical to those that courts have held are non-actionable opinions as a matter of law.  (See Mem. at 9 (noting that statements that a plaintiff is a "liar," made allegations that were "without merit," "had no valid basis," or were "inaccurate," and was a "non-contributor," or "uncooperative" were all held to be opinion).)

In response, Plaintiff's first argument is that Moody's did not explicitly couch its statements as opinions.  But there is no requirement, of course, that a speaker use any particular verbal talisman to signal that its statements are opinion.  Where, as here, the statements concern an ongoing controversy between two parties, a reader naturally views the statements as one

---

[3]  Plaintiff's claim that there was no ongoing controversy flatly ignores the Articles themselves, where Moody's statements were clearly solicited in response to Plaintiff's accusations of fraud.  See infra, Part II.D.  The articles also show that the claims Moody's found to be unsupported were those of "misconduct" (such as retaliation), rather than Plaintiff's policy recommendations that Moody's allegedly adopted.  See infra, Part II.C.

[4]  Specifically, Plaintiff does not even attempt to distinguish Independent Living Aids, Inc. v. Maxi-Aids, Inc., 981 F. Supp. 124, 127-28 (E.D.N.Y. 1997); El-Amine v. Avon Prods., Inc., 23 A.D.2d 283 (1st Dep't 2002); Scolnick v. Correctional Med. Servs., 132 F. Supp. 2d 1116, 1128 (N.D. Ill. 2001) – all cases where defendants' statements denying plaintiffs' accusations of wrongdoing were deemed protected opinion.  Plaintiff also fails to address Donofrio-Ferrezza v. Nier, No. 04-1162, 2005 WL 2312477, at *16 (S.D.N.Y. Sept. 21, 2005).  Other cases cited by Plaintiff in his brief only reinforce Moody's argument that its statements qualified as non-actionable opinion.  See Gurda v. Orange Cty. Pub. Div. of Ottaway Newspapers, Inc., 81 A.D.2d 120, 121, 126 (2d Dep't 1981), rev'd on other grounds, 56 N.Y.2d 705 (1982) (statement by party's attorney that opposing party's attorneys "were guilty of intentional fraud" was protected opinion).

3

party's subjective belief concerning the merits of the dispute.  In his attempt to distinguish <u>Cytyc Corp. v. Neuromedical Systems, Inc.</u>, 12 F. Supp. 2d 296 (S.D.N.Y. 1998), Plaintiff makes this precise point.  The <u>Cytyc</u> court explicitly found the defendant's statement that the plaintiff's allegations were "frivolous" was an expression of defendant's "belief." <u>Id.</u> at 302.

Second, Plaintiff claims that "independent investigation" and "cooperation" are not words of opinion, but "precise terms" because their meanings have been adjudicated in courts of law.  This argument is frivolous.  To begin with, Plaintiff is not claiming the word "cooperation" is defamatory; the relevant phrase is "refused to cooperate," which, as Moody's noted in its opening brief, is Moody's characterization of the admitted fact that Plaintiff declined to speak with the Kramer Levin attorneys.  Moreover, even assuming that "independent counsel" has a specific, ascertainable meaning, Moody's assertion that the Kramer Levin investigation was "independent" was a statement of Moody's <u>belief</u> of that fact and therefore non-actionable.[5]

Third, Plaintiff's argument that there was no "ongoing controversy" when Moody's made the statements at issue is internally inconsistent.  In one breath, Plaintiff claims that "[t]he statements at issue … did not pertain to an ongoing controversy," but in another argues that they "were made both before and after Mr. Kolchinsky's testimony to Congress regarding …. Moody's alleged misconduct [that] had both civil and criminal implications."  Opp. Mem. at 9,

---

**5**   The "authorities" to which Plaintiff cites never actually *define* either "independent investigation" or "cooperation."  Indeed, the Conference Board recommendations address only "special" investigations, defined as a particular *type* of "independent investigation." Malecki Decl. Ex. B at 32.  And the proffered authorities on "cooperation" in the federal investigative context only discuss guidelines as to what *may* constitute "cooperation" – they do not define the term itself.  Plaintiff offers no reason why such guidelines – developed and used specifically in the context of federal investigations – should be imported to the private, internal investigation context.  Under any definition, however, Plaintiff's refusal to speak to investigators regarding allegations he himself had raised clearly constitutes a refusal to cooperate.

4

12. And indeed, the Wall Street Journal article makes clear that Plaintiff had spoken with Congress and been invited to testify <u>before</u> the article was published. (<u>See</u> Nuccio Decl. Ex. B.) Moody's statements were therefore, at most, "defensive salvo[s] in [an] ongoing battle" and therefore statements of opinion, not fact. <u>See</u> <u>Karp v. Hill and Knowlton Inc.</u>, 631 F. Supp. 360, 365 (S.D.N.Y. 1986).

Finally, Plaintiff's assertion that Moody's failed to disclose underlying facts fails because the level of *detail* Plaintiff seeks is not required. <u>See</u> <u>Cytyc</u>, 12 F. Supp. 2d 296. The <u>Cytyc</u> court found to be non-actionable opinion the statement "[w]e are confident that [certain] petitions [filed by plaintiff] are frivolous and without merit." <u>Id.</u> at 302. The defendant commented further that "[t]he issues raised in these petitions were [previously] thoroughly reviewed" by a third party, without providing any detail into that review process. <u>Id.</u> Despite lack of detail, the court found that defendant sufficiently "offered the basis for [its] conclusion" and therefore "[t]o the extent that the opinions … imply the assertion of objective fact, [they] are not actionable because they disclose 'the facts on which [they] are based.'" <u>Id.</u> (quoting <u>Levin v. McPhee</u>, 119 F.3d 189, 197 (2d Cir. 1997)). As in <u>Cytyc</u>, Moody's explained that various investigations – first its own, then Kramer Levin's – found Plaintiff's claims of misconduct to be without merit. The <u>Cytyc</u> court did not require a deep dive into the underlying facts of such review – or any dive at all – and Plaintiff offers no decisions requiring this court to do so either.

    **C.**    <u>**If the Statements Contain Verifiable Facts, They Are Substantially True.**</u>

As per Moody's moving brief, to the extent that any of its statements assert facts, they are substantially true and therefore not defamatory. Plaintiff's responses cannot save his claims.

First, Plaintiff's claim based on Moody's alleged adoption of his policy recommendations fails because those *recommendations* were separate and apart from his *complaints* of misconduct. Plaintiff made three internal complaints, in September 2007, in 2008, and in July 2009. Compl.

5

¶¶ 11-15, 24-26.  Plaintiff *also* made policy recommendations, *solicited* by Moody's, in October 2008 and January 2009.  Compl. ¶¶ 16-17, 23.  It is those recommendations – offered *outside* the context of his internal complaints – that he claims Moody's adopted.  Compl. ¶¶ 55-57, 60-63.  And the Articles show that the "claims of misconduct" referenced by Moody's were Plaintiff's internal *complaints* rather than any separate policy recommendations.  See Nuccio Decl. Ex. B at 2 (describing Plaintiff's 2008 retaliation complaint in context of his "evolving series of claims of misconduct").  As Plaintiff's complaints and policy recommendations were separate, his claim that Moody's lied when it allegedly treated them differently is rank speculation insufficient to meet his burden under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Second, the report of Kramer Levin, an outside law firm retained by Moody's to investigate allegations of internal wrongdoing, fits the classic definition of an "independent investigation."  (See Mem. at 12.)  Plaintiff faults Moody's for failing to produce "evidence" that the investigation was, in fact, independent, but it is Plaintiff's burden to allege facts demonstrating that Kramer Levin did not, in fact, conduct an "independent investigation."[6]

Third, the Amended Complaint and the Articles show that Plaintiff did, in fact, refuse to "cooperate" with the Kramer Levin investigation.  As the Wall Street Journal article notes, Plaintiff "declined" to speak with the Kramer Levin attorneys on the ground that he had already talked to them and had written a 13-page letter with "everything he knew."  (Nuccio Decl. Ex. B.)  Plaintiff claims this was justified, but this does not change the fact that Moody's characterization was, at the very least, "substantially true."

---

[6]  Plaintiff claims only that "legal ethics and rules of professional conduct" somehow preclude an attorney retained by a party from "provid[ing] an unbiased opinion" or "conduct[ing] an impartial investigation."  The exact opposite is true:  New York's Rules of Professional Conduct specifically state that "[i]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice."  NYRPC 2.1.

6

Finally, Plaintiff does not contest -- and therefore concedes – Moody's assertion that Plaintiff's array of complaints constituted an "evolving series of claims."

### D. Plaintiff Is A Limited Purpose Public Figure But Has Not Pleaded Facts Sufficient To Establish Actual Malice.

The press articles show Plaintiff is a limited purpose public figure. They reported that Plaintiff "t[ook] his concerns to congressional investigators" and "talked to congressional investigators after his suspension and says they invited him to testify." Nuccio Decl. Ex. B. Indeed, Moody's statements at issue were solicited by the press in *response* to Plaintiff's claims. See Nuccio Decl. Ex. B at 1 (Wall Street Journal reviewed Plaintiff's internal complaint in advance of House Committee testimony, and Moody's spokesman "declined to comment" on the ratings discussed therein); Ex. C (Moody's spokesman interviewed on September 25, 2009, *after* Plaintiff's allegations were first publicized); Ex. D at 1 (House Committee hearing postponed so Moody's could "respond to [Plaintiff's] allegations"); Ex. F at 2-3 (Moody's responses to reporter's asking specifically about Plaintiff). It was Plaintiff's discussions with the media – in *response* to which Moody's comments were solicited – that commenced the "incident that is the subject of litigation." Accordingly, Plaintiff qualifies as a limited purpose public figure. See Contemporary Mission, Inc. v. The New York Times Co., 842 F.2d 612, 617 (2d Cir. 1988).

As to the "actual malice" test, Plaintiff ignores the applicable standard: a "high degree of awareness of … probable falsity" and "obvious reasons to doubt the veracity" or "accuracy" of the report. Contemporary Mission, 842 F.2d at 621; St. Amant v. Thompson, 390 U.S. 727, 731 (1968). There are no "obvious reasons" suggesting Moody's could anticipate its statements being construed as false, *i.e.*, that Plaintiff's claims regarding "misconduct" could be construed to include internal policy recommendations; that Kramer Levin's "independent" status could be challenged; or that Plaintiff "had, in fact, cooperated" despite his refusal to meet with Kramer

7

Levin.  Plaintiff's allegations of malice, premised entirely on speculation and "bare assertions of ill will," do not meet the standard.  See Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 281-82 (1974).  Accordingly, he has failed adequately to allege actual malice and his defamation claim must fail.

### E. **Plaintiff Has Not Pleaded Defamation Per Se Or Alleged Special Damages.**

Reviewing Moody's statements in their proper context – the Articles – reveals that they simply do not contain what Plaintiff claims they contain: "systematic[] disseminat[ion] that [his] work product was inadequate and baseless."  Opp. Mem. at 19-20; see supra, Part II.A.  It is clear that the statements themselves do not accuse Plaintiff of incompetence as a ratings analyst.  Courts have repeatedly held that similar statements – and far worse – do not constitute defamation per se.  See, e.g., Vasarhelyi v. New School for Social Research, 230 A.D.2d 658 (1st Dep't 1996) (statement that plaintiff failed to cooperate not defamatory per se); Stephan v. Cawley, 24 Misc.3d 1204(A) (N.Y. Sup. Ct. 2009) (suggestion that a credit default swap trader passed out at his desk due to drug use not slanderous per se).  This failure to adequately plead defamation per se or allege special damages is fatal to Plaintiff's claim.  (See Mem. at 19.)

### F. **Plaintiff's Declaratory Judgment Claim Must Be Dismissed.**

Plaintiff's seeks a declaration that "by affirmatively using the media to disparage Mr. Kolchinsky in his profession, Moody's has waived any claims of confidentiality and privilege" with respect to Kramer Levin's findings and other matters.  (Compl. ¶ 114.)

First, this claim must fail because there has been no disparagement, and Plaintiff's defamation claim is without merit.   Second, Plaintiff's bare bones allegation does not "plead factual content that allows the court to draw the reasonable inference" that Moody's misstated anything that Kramer Levin may have imparted to it.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

8

(2009).[7]  Though Plaintiff cites U.S. v. Jacobs, 117 F.3d 82 (2d Cir. 1997), Jacobs does not apply because there is no factual basis pled from which to conclude that Moody's misstated a privileged communication, thereby giving rise to a waiver of any sort.  And even if Moody's had misstated what Kramer Levin told it, Jacobs would, at most, authorize only a very limited waiver "extend[ing] to the specific communication involved and not generally to other communications on the same subject."  Id. at 90.  It would by no means authorize a waiver as to all privileged documents and information in Moody's possession pertaining to Plaintiff's complaints and the Kramer Levin investigation thereof, which is the declaratory relief Plaintiff is seeking.  Plaintiff's declaratory judgment claim should therefore be dismissed.

### G.     Plaintiff's Tortious Interference Claim Must Be Dismissed.

Although Plaintiff would like to believe otherwise, tortious interference claims that are redundant of defamation claims must be dismissed as duplicative.  See, e.g., Chao v. Mount Sinai Hosp., No. 10-2869, 2010 WL 5222118, at *13 (S.D.N.Y. Dec. 17, 2010) (tortious interference claim dismissed as "duplicative of the defamation allegations"); Krepps v. Reiner, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008) ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage").  Plaintiff's tortious interference claim is simply a mislabeled defamation claim.

Plaintiff's tortious interference claim must also be dismissed because he has failed adequately to allege that Moody's interfered with a specific third party relationship.  Plaintiff

---

[7]  To put it bluntly, Plaintiff's allegations make no sense. Plaintiff ignores the fact that Kramer Levin – not Moody's – also provided the House Committee "with a briefing on [its] preliminary findings," which were also "shared with [Moody's] regulator." Nuccio Decl. Ex. E at 21.  Thus, if Plaintiff's claim were true, either (1) the House Committee and regulators heard Kramer Levin tell them one thing and Moody's tell them another, yet neither questioned nor reported it; or (2) Kramer Levin misrepresented its own findings.  Plaintiff offers no reasonable factual basis to conclude that either of these wild scenarios occurred.

argues that this requirement does not apply because Moody's is a monopoly, but Moody's is not, in fact, a monopoly.[8] The cases cited by Plaintiff only underscore that dismissal is appropriate.[9]

### H. Plaintiff's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.

Plaintiff completely ignores the cases cited by Moody's finding IIED and defamation claims to be duplicative.[10] Plaintiff also fails to allege extreme and outrageous conduct. The very case law cited by Plaintiff reveals that the "stringent New York standard" for IIED claims requires conduct far more egregious than he would have this court believe. See Stuto v. Fleishman, 164 F.3d 820, 828-829 (2d Cir. 1999) (citing cases involving, *inter alia*, depriving plaintiff of electricity; accusations of criminal conduct; false imprisonment; verbal abuse; malicious prosecution; physical threats; harassing phone calls). Moody's measured and mild public statements bear no resemblance to the conduct necessary to support an IIED claim.[11]

---

[8] Standard & Poor's and Fitch, among others, also provide credit ratings. Nuccio Decl. Ex. C. Plaintiff offers no basis for his claim that unnamed "companies" require ratings *from Moody's* to "operate." Opp. Mem. at 23.

[9] In the lone Second Circuit case Plaintiff cites, Volvo N. Amer. v. Men's Intern. Pro. Tennis Coun., 857 F.2d 55 (2d Cir. 1988), the court reversed dismissal of a tortious interference claim – not because of defendant's alleged monopoly status – but because plaintiff specifically identified third parties that defendant allegedly sought to "dissuade and intimidate" from associating with plaintiff. Id. at 74-75. The same court upheld dismissal of other plaintiffs' tortious interference claims for failure to "allege[] any particular business relations with which [defendants] interfered." Id. at 75. Plaintiff's other cited case – In re IBP Confidential Business Documents Litig., 755 F.2d 1300 (8th Cir. 1985) – supports Moody's other argument, as it overturned a damages award for tortious interference because it was duplicative of plaintiff's defamation claim. See id. at 1318.

[10] Plaintiff relies on Sullivan v. Board of Educ., 131 A.D.2d 836 (2d Dep't 1987), but that case is unhelpful because it does not disclose whether the plaintiff's defamation and IIED claims were based on the same factual allegations. The cases cited by Moody's in contrast, stand unequivocally for the proposition that an IIED claim premised on the same facts as a defamation claim must be dismissed. See Moody's Mem. at 17.

[11] Moreover, Plaintiff's contention that Moody's "depriv[ed] him of [sic] livelihood," Opp. Mem. at 24, conveniently overlooks the fact that he resigned from Moody's.

### III.     CONCLUSION

For the foregoing reasons, Moody's respectfully requests that the Court grant its motion and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Respectfully submitted,

**Morgan, Lewis & Bockius LLP**
Attorneys for Moody's Corporation, Moody's Investors Service, Inc., and Raymond McDaniel


s/ Joseph A. Nuccio
René M. Johnson
Joseph A. Nuccio

Dated:  February 18, 2011

11